SYDNEY G. STEIKER. ET AL., PLAINTIFFS-RESPONDENTS, v. PHILADELPHIA NATIONAL INSURANCE CO., DEFENDANT-APPELLANT.

Argued April 30, 1951—Decided May 21, 1951.

*Mr. John S. Foster* argued the cause for the appellant (*Messrs. Lum, Fairlie & Foster,* attorneys).

*Mr. Archibald Kreiger* argued the cause for the respondents.

The opinion of the court was delivered by

VANDERBILT, C. J.   This is an appeal from a judgment of the Law Division of the Superior Court in favor of the plaintiffs in the amount of $27,937.50.   The defendant's appeal to the Appellate Division of the Superior Court has been certified on our own motion.

This action was brought by the plaintiffs, who are automobile and truck dealers in Paterson, to recover damages sustained as the result of a fire loss under two policies of insurance issued by the defendant.   Shortly before the policies here involved were issued, the plaintiffs communicated with an agent of the defendant, who made an inspection of the plaintiffs' various places of business and observed the nature of their operations and all of the activities carried on by the plaintiffs in each of their several locations, all of which were located in Paterson with the exception of one in Totowa. After the survey by the defendant's agent was completed, the policies here involved were issued to the plaintiffs, who were described therein as a "new car dealer."   These policies were automobile physical damage policies to which were affixed automobile dealer's open policy endorsements.   Printed in the policies was the following definition:

"Except where specifically stated to the contrary, the word 'automobile' wherever used in this policy shall mean the motor vehicle, trailer or semi-trailer described in this policy. The word 'automobile' shall also include its equipment and other equipment permanently attached thereto. The word 'trailer' shall include semi-trailer."

In the endorsements it was provided that the policies would not cover

"Automobiles while in any building or premises occupied by the insured as a factory or assembly plant, but this shall not be construed to mean salesrooms, service stations or garages."

Schedules annexed to the endorsements set forth the limit of liability for each of the plaintiffs' various locations, the total liability for the premises here involved, 75 River Street in Paterson, being $25,000.

A few weeks after the policies in question were issued, a fire occurred at the 75 River Street location and considerable property owned by the plaintiffs was destroyed or damaged. This property consisted of motorcycle tops and curtains, motorcycle panel bodies, prefabricated wooden and metal bodies for trucks and trailers, attachments for trailers, and two trucks. The defendant refused to pay for the loss, which it is conceded came to more than $25,000, contending that it was not covered by the policies because the property involved was in an assembly plant and therefore within the exclusionary clause of the policies above quoted, and because the items damaged, not being automobiles, were not covered by the policies. The plaintiffs then commenced this action to recover on the policies. The parties waived a jury and submitted the case to the court on the stipulation that various depositions taken in the case together with answers given by the plaintiffs to interrogatories propounded by the defendant be considered as evidence. It was further agreed that after the court had made its findings of fact based on this evidence it would determine as a matter of law two questions: (1) Was 75 River Street operated by the plaintiffs as an assembly plant? (2) Do the items for which the plaintiffs make claim come within the term "automobile" as that term is defined in the policies,

when not physically attached to a chassis at the time of the fire?

The evidence admitted by stipulation showed that the plaintiffs' business, although carried on at several locations, was closely integrated. Because of limitations of space component parts of various vehicles were stored at various locations so as to best fit in with the plaintiffs' method of operation, which was to purchase truck chassis, bodies and other essential parts adapted to and necessary for the use of the trucks, either from the same manufacturer or from different manufacturers. In each case immediately upon the purchase of the body or other part for a particular truck or other vehicle, the item was identified by a tag or label bearing the serial number of the truck chassis for which it was intended. Records were maintained at all times showing the appropriation of the various items to the particular truck chassis, trailer or motorcycle with which they were associated and to which they would eventually be physically attached. These items were kept in storage at several of the plaintiffs' places of business, including 75 River Street. Sales were made in terms of complete trucks, trailers or motorcycles. At the time of the sale of a particular truck, for example, the truck chassis would be delivered from one of the several open lots where they were stored to 75 River Street. There the various items bearing the same serial number would be mounted on the truck chassis so as to form a completed unit, which would then be delivered to the purchaser.

The premises at 75 River Street consisted of two floors. The main floor was used for mounting truck bodies, the second floor front for storage and the display of truck equipment and the second floor rear for wood-working machinery for use in fitting truck bodies. The plaintiffs employed about eight men at this location whose job it was to mount the prefabricated wooden or metal bodies which were stored there on their respective truck chassis. In connection with this work of attaching the body of a truck to the chassis the employees of the plaintiffs used such tools as electric drills, hand saws, joiners

and metal breakers to assist them in performing their work. In addition to truck parts the plaintiffs also stored at 75 River Street parts allocated to motorcycles and trailers. These were similarly tagged and identified as belonging to a particular motorcycle or trailer chassis to which they would be attached at the time of a sale. In many instances a particular vehicle was merely restored to the condition it was in when received from the manufacturer prior to its dismantling by the plaintiffs to facilitate its storage.

The trial court, after considering the facts, concluded that the premises in question could not be considered an "assembly plant" within the meaning of the policies and that the various items which were destroyed were "equipment and other equipment permanently attached" to automobiles within the definition of the word "automobile" in the policies, even though the items at the time of the fire were not physically annexed to the chassis of the trucks or other vehicles to which they belonged. Judgment was accordingly entered in favor of the plaintiffs in the amount of $25,000 together with interest. From this judgment the defendant took this appeal. The issues presented here are identical with those which the parties submitted to the court below and need not be restated.

The defendant contends that the destroyed property was located in a building which was operated by the plaintiffs as an "assembly plant" and therefore excluded from coverage by the terms of the policies. With this contention we cannot agree. While at 75 River Street the plaintiffs assembled trucks, trailers and motorcycles for delivery to customers in addition to storing and displaying various component parts of vehicles, they were not operating an assembly plant for automobiles within the ordinary meaning of the term. The operations at the premises in question were similar to those carried on in the garage or service station of any dealer in new trucks, trailers or motorcycles. The work of readying the new vehicles for the customer by affixing the body and other component parts and equipment is merely incidental to the conduct of such a dealership and does not convert the premises where the

work is done into an assembly plant. The term assembly plant as generally understood—and there is nothing here to indicate that it should be given any special meaning—is descriptive of a place where, by the use of mass production methods, a manufacturer of a product takes the precut and prefabricated component parts thereof, in quantity, and combines or assembles them into the finished product. Because of the exigencies of shipping or storage it is common today for dealers or distributors of all sorts of products to receive or keep bulky items broken down into their major component parts and to assemble or reassemble them upon receipt or at the time of sale. Such operations, however, do not connote to the ordinary person that the dealer or distributor is operating an assembly plant. In the instant case, therefore, it seems clear to us that the building at 75 River Street in which the destroyed and damaged items were located was not an assembly plant within the meaning of the policies, even though the plaintiffs were required, because of space limitations, to carry on their dealership operations in several different buildings at different locations.

The defendant also contends that the items destroyed and damaged by the fire were not automobiles within the meaning of the word as defined in the policies, because they were not at the time of the loss physically attached, permanently or otherwise, to any automobile. This contention is not convincing. The definition of the word "automobile" in the policies does not require that there be any attachment of the equipment to the automobile, the specific words being "the word 'automobile' shall also include *its equipment* and other equipment permanently attached thereto" (Italics added). From the facts in this case it is quite clear that the items stored in the building where the fire occurred were equipment belonging to specific automobiles, even though the chassis of those automobiles were stored for operational reasons at other locations pending the time of sale. While, for example, the truck bodies had not as yet been mounted on their respective truck chassis, each of them had nevertheless from the time

of its purchase by the plaintiffs been identified with and intended for one particular chassis and no other. Although not physically attached they were certainly constructively attached. It would seem from the definition of the word "automobile" in the policies that the parties must have intended to cover all those items, which were component parts of specific trucks, trailers or motorcycles, even though not physically attached.

In our opinion the policies in question clearly covered the plaintiffs' loss, and we therefore have no occasion to refer to the maxim *Verba chartarum fortius accipiuntur contra proferentem.* When, as here, the terms of a contract of insurance are clear and unambiguous, the court has no choice but to enforce the contract as it finds it, *Kupfersmith v. Delaware Insurance Co.,* 84 *N. J. L.* 271, 275 (*E. & A.* 1913); *Caruso v. John Hancock Mutual Life Ins. Co.,* 136 *N. J. L.* 597, 598 (*E. & A.* 1947); *James v. Federal Insurance Co.,* 5 *N. J.* 21, 24 (*Sup. Ct.* 1950); *Herbert L. Farkas Co. v. N. Y. Fire Ins. Co.,* 5 *N. J.* 604, 610 (*Sup. Ct.* 1950). It is only when the contract contains ambiguous language that the court will construe the contract against the party that drew it, *Connell v. Commonwealth Casualty Co.,* 96 *N. J. L.* 510, 511 (*E. & A.* 1921); *Nickolopulos v. The Equitable Life Insurance Society,* 113 *N. J. L.* 450, 456 (*E. & A.* 1934); *United Deliveries, Inc. v. Norwich, &c., Ltd.,* 133 *N. J. L.* 393, 395 (*E. & A.* 1945). This doctrine of construction, of course, does not apply to those parts of standard policies that are prescribed by statute, *Herbert L. Farkas Co. v. N. Y. Fire Ins. Co.,* 5 *N. J.* 604, 611 (*Sup. Ct.* 1950) and cases therein cited. But here we are not dealing with standard policies or with policies containing ambiguous language. We have simply to enforce the contracts as we find them.

The judgment under review is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, BURLING and ACKERSON—6.

*For reversal*—None.