29 N.J. Super. 478 (1954)
102 A.2d 797
LUCILLE A. SMITH, PLAINTIFF-APPELLANT,
v.
METROPOLITAN LIFE INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 25, 1954.
Decided February 8, 1954.
*480 Before Judges EASTWOOD, JAYNE and FRANCIS, JJ.
Mr. Alfred W. Kiefer argued the cause for the plaintiff-appellant.
Mr. Nicholas Conover English argued the cause for the defendant-respondent (Messrs. McCarter, English & Studer, attorneys).
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
The substantial question here is whether the plaintiff-appellant Lucille A. Smith, beneficiary under two policies of insurance issued to plaintiff's husband, John F. Smith, by the defendant-respondent Metropolitan Life Insurance Company (hereinafter referred to as the "insurance company"), is precluded from recovery of the sums specified therein by virtue of the exclusionary "Aviation Provisions" of the policies.
On motion of the insurance company at the end of the plaintiff's case, the Law Division directed the entry of a judgment on the first count of the complaint in favor of the plaintiff for $25.12, representing the reserve on policy No. 18679063-A, and of no cause of action on the second and third counts thereof. The plaintiff appealed from the ensuing judgment.
The facts are undisputed and may be concisely stated as follows: On July 16, 1951, the day of the insured's death, he rented a Piper Cub seaplane, equipped with two seats and dual controls, from Mellor-Howard Seaplane Base and Flying School, Ridgefield Park, New Jersey. The insured, *481 a licensed pilot, accompanied by his brother-in-law  not a licensed pilot  purposed flying the plane to Fire Island, New York, to do some swimming. When the plane left its base, it is conceded that the insured piloted it. Later the same day, the plane was found upside down in the ocean some 200 yards from Fire Island beach in the neighborhood of a boiler from a prior steamship or boat wreck. When extricated from the plane, the two men were strapped to the seats of the plane and upon examination were found to be dead. The medical cause of death was stated as acute asphyxia due to drowning. At the time the weather was foggy, the insured's plane had been seen flying over the beach heading out toward the ocean; shortly thereafter "an explosion similar to a shotgun explosion was heard" and the wreckage of the plane was seen in the ocean.
In the first count of the plaintiff's complaint, she sought recovery of the death benefit of $5,000 under life insurance policy No. 18679063-A; under the second count she sought recovery of double indemnity under the accidental means death benefit provision of the same policy; and under the third count she sought recovery under the terms of accident policy No. 2020313-AH.
The pertinent language of the exclusionary clause in the life insurance policy reads: "* * * the following are risks not assumed under this policy: death as the result of travel or flight in any species of aircraft if the insured has any duties relating to such aircraft or flight, * * *." If that clause applies, then the recovery thereon is limited to defendant's reserve on the policy which was stipulated to be $25.12.
Under the "Accidental Means Death Benefit" of the life insurance policy, the insured was entitled to an additional sum of $5,000 in the event of death as the result of accidental means, provided "that such death shall not have occurred * * * (d) as the result of travel or flight on any species of aircraft if the insured has any duties relating to such aircraft or flight, * * *.
*482 The exclusionary clause in the accident policy provided:

"RISKS EXCLUDED
This policy shall not cover, and no payment of any kind shall be made hereunder for, any of the results enumerated and defined in Benefit Provisions 1 to 4, inclusive, which are caused or contributed to by

* * * * * * * *
(c) travel or flight on any species of aircraft if the insured has any duties relating to such aircraft or flight, * * *."
Incidentally, on the face of the insurance policy, printed in red ink, is the legend: "Read your policy carefully. Certain aviation risks are not assumed. In case of any doubt write your company for further explanation."
While the appellant advances several grounds for the reversal of the judgment, the basic contentions are that the exclusionary aviation clauses are ambiguous, vague and equivocal; that the word "duties" as used in defendant's policies cannot include insured's status at the time of his death, and that there was a factual issue which should have been submitted to the jury.
The function of the court is not to make contracts, but to enforce them and to give effect to the intention of the parties. Corn Exchange National Bank & Trust Co. of Philadelphia v. Taubel, 113 N.J.L. 605, 608 (E. & A. 1934); Basic Iron Ore Co. v. Dahlke, 103 N.J.L. 635, 638 (E. & A. 1927); Verhagen v. Platt, 1 N.J. 85, 88 (1948). Words in an insurance policy will be given their ordinary and usual meaning, and if there is no ambiguity, a strained or distorted construction will not be applied. Jorgenson v. Metropolitan Life Ins. Co., 136 N.J.L. 148 (Sup. Ct. 1947). Where in written instruments the words or other manifestations of intent bear more than one reasonable meaning, they are interpreted more strongly against the party from whom they originated, unless their use by him is prescribed by law. Vailsburg Motor Corp. v. Fidelity & Casualty Co., 110 N.J.L. 209 (E. & A. 1933); Rockmiss v. New Jersey Mfrs. Ass'n Fire Ins. Co., 112 N.J.L. 136 (E. & A. 1934); Clott v. Prudential Ins. Co. of America, 114 N.J.L. 18 *483 (Sup. Ct. 1934), affirmed 115 N.J.L. 114 (E. & A. 1935); Moscowitz v. Middlesex Borough Bldg. & Loan Ass'n, 14 N.J. Super. 515 (Law Div. 1951); Schneider v. New Amsterdam Casualty Co., 22 N.J. Super. 238 (App. Div. 1952). No occasion arises for the application of the canons of construction where the language employed to express the common intention is clear and unambiguous. The rule adopted in the construction of other contracts is applicable in interpreting the language of the provisions of an insurance policy. Kindervater v. Motorists Casualty Ins. Co., 120 N.J.L. 373 (E. & A. 1938). Cf. Serafino v. United States Fidelity & Guaranty Co., 122 N.J.L. 294 (Sup. Ct. 1939); Cronan v. Travelers Indemnity Co., 126 N.J.L. 56 (E. & A. 1941); James v. Federal Insurance Co., 5 N.J. 21 (1950). As stated by Chief Justice Vanderbilt in James v. Federal Insurance Co., supra:
"* * * Whatever may be the rules of construction when a policy of insurance is ambiguous, it has long been the law in this State that when the contract is clear the court is bound to enforce the contract as it finds it. * * *"
Cf. Bew v. Travelers' Insurance Co., 95 N.J.L. 533 (E. & A. 1921); Steiker v. Philadelphia Nat. Ins. Co., 7 N.J. 159 (1951).
"In the absence of restraining statutory provisions, such insurers have the right to limit their liability; and the judicial function of exposition is not to be extended to the imposition of terms not within the plain sense and meaning of the language employed to express the common intention." Gusaeff v. John Hancock Mutual Life Ins. Co., 118 N.J.L. 364 (Sup. Ct. 1937).
The plane was being operated by the insured when it left its base, and when the two bodies were removed after the accident, they were found to be strapped to the seats. The fact that there was no specific proof as to which one was piloting the plane at the time of the accident, is immaterial. Under the undisputed facts, the insured having rented the plane and being the only licensed pilot aboard, *484 had "duties" to perform in connection with the airplane, its travel and flight. The appellant concedes that: "If the word `duties.' as used in the policies, or the entire clause in which the word is found, has a plain or common meaning, then there can be no ambiguity." We find no ambiguity, vagueness nor uncertainty with respect to the interpretation of the exclusionary provision. The word "duties" is one that is of such common usage and well-known meaning; there can be no doubt or uncertainty as to the construction to be placed thereon. It clearly connotes the responsibility of the insured for the performance of an act or acts "relating" to the aircraft in question. Surely, if any one has "duties" relating to an aircraft, its travel or flight, it is the licensed pilot thereof. If the insured did have such duties  and the proofs clearly establish that fact  then the plaintiff, under the exclusionary clauses, is precluded from recovery.
That the insured's death was caused by an accidental means is not controverted. But, in deciding this issue, the exact cause of death is unimportant. The essential question is whether in connection with his travel and flight on that occasion the insured had any duties relating to the aircraft or its flight.
In Neel v. Mutual Life Ins. Co. of New York, 131 F.2d 159 (2 Cir., 1942), the policy excluded coverage "if death resulted * * * from participation in aeronautics." The insured's body and his plane were found separately in the ocean. The insured had drowned. In affirming the denial of recovery, Judge Augustus N. Hand said for the court, at 131 F.2d 160:
"The policy provides that Double Indemnity shall not be payable if death resulted `from participation in aeronautics' and it seems quite contrary to the natural meaning of the proviso to say that Stubbs did not meet his death from `participation in aeronautics' merely because he may not have been killed by impact upon the water. If he landed in the open sea, even though without immediate injury, drowning was an almost inevitable consequence. To say that his death did not result `from participation in aeronautics' would exclude from the proviso of the policy the most ordinary risks involved and limit the effect of the clause in an unexpected and unreasonable way."
*485 And at page 161:
"In the circumstances we have set forth it hardly seems useful to deal with questions about the burden of proof for it is clear that whatever assumptions we may indulge in, the death of the insured `resulted * * * from participation in aeronautics.' It would not have occurred when it did if he had not taken the flight in the aeroplane, and liability for death resulting from such a flight was exactly what was expected from the coverage of the policy. In other words, the flight, and not the drowning, was the predominant cause of death.
* * * Here, as a matter of common knowledge, and in view of the natural meaning of the words used, liability is excluded by the terms of the policy when an accident is incident to an ordinary risk of aviation."
In Order of United Commercial Travelers v. King, 161 F.2d 108 (4 Cir. 1947), affirmed 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608 (1948), the policy excluded "death resulting from participation * * * in aviation." The insured's plane made an emergency landing at sea. The insured and his companion inflated their life jackets, left the plane, and two and a half hours later were seen still alive and uninjured in the water. Both men drowned before rescue several hours later. In reversing a judgment in favor of the beneficiary, the court held, at 161 F.2d 109:
"Aside from the many authorities on this question (to which we will advert later in this opinion), we think the exclusion clause clearly comprehends the very situation that here developed. Any other conclusion must ignore the plain meaning and presence of the word `resulting.' To give that word the effect that it must have in everyday speech (and as understood by laymen as well as lawyers) obviates the necessity for technical and artificial rules of construction."
The language employed by the court in the cases of Neel v. Mutual Life Ins. Co. of New York and Order of United Commercial Travelers v. King, supra, is apropos and quite logically refutes the contentions of the appellant here.
We disagree with the appellant's contention that under the proofs a factual issue was raised as to whether the insurance company was entitled to claim restriction of *486 liability in case of death resulting from airplane travel other than as a fare-paying passenger. As repeatedly stated hereinbefore, there was no controverted factual question before the court nor any ambiguity in the language of the exclusionary clauses. Accordingly, it became the trial court's duty to declare the judgment which the law imposes. Kaufman v. Pennsylvania R. Co., 2 N.J. 318 (1949); James v. Federal Insurance Co., supra.
We find no merit in the other grounds asserted by the appellant for a reversal of the judgment.
Affirmed.