ELIZABETH McLEAN SCARBORO v. PILOT LIFE INSURANCE
COMPANY.

(Filed 30 June, 1955.)

**1. Appeal and Error § 6c (2)—**

A sole assignment of error to the signing of the judgment presents the question whether the facts found by the lower court are sufficient to support the judgment.

**2. Insurance § 28—**

A single-seated glider is an "aircraft" within an Aviation Exclusion Rider in a life insurance policy.

**3. Same—**

Insured was fatally injured when a single-seated glider he was operating fell to the earth. *Held:* The pilot of a glider is under duty to exercise *ordinary care to avoid injury to persons in the air and upon the ground,* particularly in returning to earth, and therefore insured was a "pilot" having "any duties whatsoever aboard such aircraft while in flight" within the purview of an Aviation Exclusion Rider in the policy of insurance on his life.

**4. Same—**

A provision in a policy of life insurance excluding risk if insured "is a pilot, officer or other member of the crew" of an aircraft, is not ambiguous and does not require that insured be a pilot who is a member of a crew in order for the exclusion clause to obtain, since the terms are disjunctively set forth and the occurrence of any one of the conditions excludes liability.

**5. Insurance § 13a—**

When the terms of an insurance policy are not ambiguous, they must be given their usual, ordinary and commonly accepted meaning and enforced accordingly, like any other contract, since it is the duty of the courts to construe policies of insurance as written, and not to rewrite them.

JOHNSON, J., took no part in the consideration or decision of this case.

Appeal by plaintiff from *Stevens, J.,* February-March Civil Term 1955 of Robeson.

Civil action on a policy of insurance issued by defendant on the life of George Howard Scarboro, wherein plaintiff Elizabeth McLean Scarboro is named as beneficiary.

The parties agreed to waive a jury trial, and that the Trial Judge should find the facts and declare the law arising thereon.

The Trial Judge found these facts:

*One.* On 25 May 1954 George Howard Scarboro applied to the defendant Pilot Life Insurance Company for a $10,000.00 policy upon his life. Pursuant to his application and supplemental application, the defendant, upon the payment of the premium recited in the policy, issued a $10,000.00 policy with attachments appearing thereon on his life.

*Two.* The defendant admitted these facts: As alleged in the complaint, George Howard Scarboro on 12 September 1954 was operating an aircraft, generally known and designated as a glider. While he was operating this glider, it crashed to the ground thereby causing injuries to him, which resulted in his death the next day. That the liability of defendant under the policy is to be determined by whether or not the Aviation Exclusion Rider attached to the policy and made a part thereof excludes from coverage the death of the insured under such circumstances. If the Aviation Exclusion Rider does not exclude from coverage the death of the insured under such circumstances, the defendant is liable.

*Three.* It was a single-seated glider. George Howard Scarboro was operating it; it fell, and in the fall he was fatally injured.

*Four.* Attached to the policy is an Aviation Exclusion Rider, which is a part thereof. The judgment entered herein setting forth the findings of facts and conclusions of law does not set forth this rider, but refers to it as a part of the policy. This is a copy of the Aviation Exclusion Rider attached to and made a part of Policy No. 393980 on the life of George Howard Scarboro:

## "Aviation Exclusion Rider

Death of the Insured as a result of travel or flight in or descent from or with any kind of aircraft is a risk not assumed under this policy.

(a) If the Insured is a pilot, officer, or other member of the crew of such aircraft, is giving or receiving any kind of training or instruction, or has any duties whatsoever aboard such aircraft while in flight; or

(b) If the aircraft is operated for any aviation training; or

(c) If the aircraft is maintained or operated for military or naval purposes.

In event of any such death the Company's only liability under this policy shall be a single sum equal to the premiums less dividends, with interest of 3% compounded annually on such net premiums, and increased by any dividends with interest left with the Company to accumulate and the cash value of any dividend additions and decreased by any indebtedness on or secured by this policy (but in no event shall the amount so paid be more than the amount payable if this provision were not attached, nor less than the reserve under this policy increased by any dividends with interest left with the Company to accumulate and by the cash value of any dividend additions and decreased by any indebtedness on or secured by this policy). The provision of this policy relating to incontestability shall not be construed to require payment by the Company of any amount in excess of that provided in this rider, if death of the Insured occurs under any of the circumstances set forth herein. Dated June 14, 1954."

The court, being of the opinion that the plaintiff was entitled to recover only for the premium paid with 3% interest, amounting to $41.71, entered judgment that the plaintiff recover such amount, that she was not entitled to recover on the policy in the amount of $10,-000.00, that the policy be cancelled, and that the plaintiff be taxed with the costs, because the defendant had tendered the $41.71 into court in full and complete discharge of all its liability under said policy.

From the judgment entered the plaintiff appealed, assigning error.

*Charles G. McLean and McLean & Stacy for Plaintiff, Appellant.*

*Varser, McIntyre & Henry and Wharton & Wharton for Defendant, Appellee.*

PARKER, J. Plaintiff's sole assignment of error is to the signing of the judgment. This presents one question for decision: whether the facts found by the Judge are sufficient to support the judgment. *James v. Pretlow,* 242 N.C. 102, 86 S.E. 2d 759; *Glace v. Throwing Co.,* 239 N.C. 668, 80 S.E. 2d 759; *Rader v. Coach Co.,* 225 N.C. 537, 35 S.E. 2d 609.

There is neither finding of fact nor evidence, that the glider was "operated for any aviation training," or that it was "maintained or operated for military or naval purposes." Therefore, paragraphs (b) and (c) of the AVIATION EXCLUSION RIDER have no application to the facts found.

This leaves for our consideration this part of the RIDER:

"AVIATION EXCLUSION RIDER

Death of the Insured as a result of travel or flight in or descent from or with any kind of aircraft is a risk not assumed under this policy.

(a) If the Insured is a pilot, officer, or other member of the crew of such aircraft, is giving or receiving any kind of training or instruction, or has any duties whatsoever aboard such aircraft while in flight."

There is no evidence or finding of fact that George Howard Scarboro "was giving or receiving any kind of training or instruction." As plaintiff states in her brief "George Howard Scarboro was flying alone for his own purposes, namely for pleasure." The Judge found as a fact that he was operating a single-seated aircraft, known as a glider, when it fell to earth, and in its fall he was fatally injured.

Plaintiff contends that the word "crew" used in the RIDER means "the company of airmen who man an aircraft"; that the words "or other member of the crew" refer back to and limit the words "pilot, officer," "and incorporates them into the general category, which follows, namely, "other members of the crew"; and that the language used means pilot, officer, of a crew of airmen. Plaintiff further contends that, considering the words of the RIDER as a whole, the words "any kind of aircraft" refer to mechanical species of aircraft, and do not cover a single-seated glider as here; and that the words "such aircraft" refer to that species of aircraft. Plaintiff further contends that George Howard Scarboro was not a pilot of a crew, had no duties whatsoever aboard the glider while in flight, and that she is not excluded from recovering the face value of the policy by any provision of the RIDER.

Attached to this policy and made a part thereof is a double indemnity provision for death through external, violent and accidental means, but "the agreement as to benefits under this provision shall be null and void if death occurs . . . (b) as the result of travel or flight in or descent from any species of aircraft if (I) the insured is a pilot, officer or other member of the crew of such aircraft, is giving or receiving any kind of training or instruction, or has any duties whatsoever aboard such aircraft while in flight, . . . , or (III) the aircraft is operated other than by a duly licensed or certified pilot in the course of his regular employment in the transport of passengers for wages or salary . . . ." It is to be noted that plaintiff in her complaint did not seek to recover on the double indemnity provision of the policy.

It is clear that the usual, ordinary and commonly accepted meaning of the word "glider" is that it is a form of aircraft. It is so defined in Webster's New International Dictionary, 2nd Ed.: "*Aeronautics.* A form of aircraft similar to an airplane, but, without any engine."

2 C.J.S., Aerial Navigation, Section 2, in Pocket Parts, gives the same definition. In *Spychala v. Metropolitan Life Ins. Co.,* 339 Pa. 237, 13 A. 2d 32, the Court said: "It thus appears that a glider is a type of airplane which is not equipped with a motor . . . ."

It is equally clear that George Howard Scarboro was pilot of this glider when it fell. In *Wilmington Trust Co. v. Mutual Life Ins. Co.,* 177 F. 2d 404, the Court said: "A few months later while on a test flight in California in a glider piloted by a Colonel Gabel, duPont was forced to bail out and was killed when his parachute failed to open." Webster's New International Dictionary 2d Ed. defines the word "pilot": *"Aeronautics.* One who flies, or is qualified to fly, a balloon, an airship, or an airplane." See also 29 Am. Jur., Insurance, Sec. 968; *Irwin v. Prudential Ins. Co. of America,* 5 Fed. Supp. 382, (1934) U.S. Av. R. 77.

In our opinion, the language of the AVIATION EXCLUSION RIDER is clear that the word "aircraft" therein used includes a single-seated glider, and there is no ambiguity in that respect.

In *Provident Life & Acc. Ins. Co. v. Anderson,* 166 F. 2d 492, the Court said: "Limitations as to war risks and aviation risks are often placed in the same section or clause of an insurance policy and the courts have been inclined to construe each type of limitation as if it were a separate and distinct provision. The mere circumstance that all the exclusions are placed in one sentence is not vital as long as no ambiguity is thereby created."

In this RIDER this risk is not assumed: "(a) If the insured . . . has any duties whatsoever aboard such aircraft while in flight." The same words are used in the double indemnity provision of the policy. These words are plain, clear, and specific and create no ambiguity, nor do any other words used in the policy create any ambiguity in respect to these words.

"In the absence of statute, the ordinary rules of negligence and due care obtain with respect to the operation of aircraft. The degree of care required of one not carrying passengers for hire is ordinary care, that is, that degree of care which the great mass of men, or an ordinarily prudent or reasonably careful person, would use under the same or similar circumstances." 6 Am. Jur., Aviation, Sec. 60. See also 2 C.J.S., Aerial Navigation, Sec. 19.

In *Smith v. Metropolitan Life Ins. Co.,* 29 N.J. Super. (Appellate Division) 478, 102 A. 2d 797, the Court said: "Surely, if any one has 'duties' relating to an aircraft, its travel or flight, it is the licensed pilot thereof."

"The law imposes upon every person who enters upon an active course of conduct the positive duty to exercise ordinary care to pro-

tect others from harm, and calls a violation of that duty negligence."
*Council v. Dickerson's, Inc.*, 233 N.C. 472, 64 S.E. 2d 551.

A glider is not an inherently dangerous instrument on the ground,
although in flight, when improperly used or improperly handled or in
the hands of an incompetent pilot, it may be. It seems plain that the
law imposed upon George Howard Scarboro the duty while piloting
this glider in flight to exercise ordinary care to avoid injury to persons
and property in the air and upon the ground, and particularly in re-
turning to earth. Such being the law, upon the facts found by the
Judge, the unfortunate death of George Howard Scarboro as a result
of injuries received by him, when this glider piloted by him fell to
earth, was not a risk assumed by the defendant, and the ruling of the
Trial Judge was correct.

If the AVIATION EXCLUSION RIDER had used the words, "If the In-
sured is a pilot, officer, *and* other member of the crew," it might be
that the word "other" would restrict the meaning of the word "pilot,"
so as to mean a pilot who is a member of a crew. See *City of St. Paul
v. Traeger*, 25 Minn. 248, 33 Am. Rep. 462, pp. 465-6. However, the
RIDER uses the words "or other member of the crew." This creates no
ambiguity. The risk is not assumed under the RIDER if the insured is:
(1) a pilot, (2) an officer, (3) or other member of the crew, or (4) has
any duties whatsoever aboard such aircraft while in flight. George
Howard Scarboro was pilot of a glider, whose fall to earth resulted in
his fatal injuries. The specific words of the AVIATION EXCLUSION
RIDER exclude his death from the risk assumed by defendant under
the policy.

We have examined the case of *Ezell v. Atlantic Life Ins. Co.*, 119
F. Supp. 614, strongly relied upon by plaintiff. In that case the
language of the "Exclusion of Certain Aviation Risks" is not identical
to the one here, and in the *Ezell Case* the two riders to the policies
"were not as all inclusive as the double indemnity rider attached to
each policy." The *Ezell Case* is factually distinguishable.

A contract of insurance, like any other contract, is to be interpreted,
and enforced according to the terms of the policy, and, unless such
terms are ambiguous, they will be interpreted according to their usual,
ordinary and commonly accepted meaning. *Haneline v. Casket Co.*,
238 N.C. 127, 76 S.E. 2d 372; *Johnson v. Casualty Co.*, 234 N.C. 25,
65 S.E. 2d 347.

It is our duty to construe policies of insurance as written, and not to
rewrite them. *Ford v. Insurance Co.*, 222 N.C. 154, 22 S.E. 2d 235.

The AVIATION EXCLUSION RIDER states: "The provision of this
policy relating to incontestability shall not be construed to require
payment by the Company of any amount in excess of that provided in

this rider, if death of the Insured occurs under any of the circumstances set forth herein."

Plaintiff makes no contention in her brief that the costs were improperly taxed.

The ruling below is
Affirmed.

JOHNSON, J., took no part in the consideration or decision of this case.