449 F.Supp. 327 (1978)
Phyllis Ann BERNSTEIN, Plaintiff,
v.
FIDELITY UNION LIFE INSURANCE CO., Defendant.
No. 77-1058C(A).
United States District Court, E. D. Missouri, E. D.
April 6, 1978.
*328 Michael D. Mulligan, St. Louis, Mo., for plaintiff.
Kenneth F. Teasdale, Richard A. Oertli, St. Louis, Mo., for defendant.

MEMORANDUM OPINION
HARPER, District Judge.
This matter is before the Court on the motion of plaintiff for partial summary judgment and the cross-motion of defendant for summary judgment.
Plaintiff, Phyllis Ann Bernstein, brought this action seeking accidental death benefits allegedly due and owing from Policy No. 366703 issued by the defendant, Fidelity Union Life Insurance Company, which insured the life of plaintiff's husband, Gary Richard Bernstein, now deceased. Plaintiff also seeks damages and attorney's fees for an alleged vexatious refusal to pay by the defendant.
Plaintiff is a citizen of the State of Missouri. The defendant is a corporation organized and existing under the laws of the State of Texas, maintaining its principal place of business in that state. The jurisdiction of this Court exists pursuant to 28 U.S.C. § 1332(a) inasmuch as diversity of citizenship exists between the plaintiff and the defendant, and the amount in controversy exceeds $10,000.00.
The pleadings, exhibits, answers to interrogatories, affidavit, insurance policy, and briefs submitted disclose the following facts: The plaintiff is the widow of Gary Bernstein and the named beneficiary on the policy at issue. Gary Bernstein was killed on June 11, 1977, while competing in an aerobatic contest over Lekrone Airport, Salem, Illinois, when his single engine Stits Playboy airplane crashed. Jack Lane, a participant in the contest, testified by affidavit that Gary Bernstein was originally flying his plane at approximately 3,500 feet over the field. Lane stated that Bernstein's plane made a 360 degree loop and then followed with an 180 degree turn. At that *329 point, debris began to fall off the aircraft's right wing. The aircraft nose-dived and crashed into the ground. Bernstein who was the sole occupant and pilot of the plane, died immediately.
At the time of his death, Bernstein's life was insured under Policy No. 366703 which was issued by the defendant (Exhibit A to plaintiff's complaint). In addition to other coverages, the defendant's policy provided for a $20,000.00 benefit for accidental death effected through external means. However, the Supplemental Contract for Additional Benefits for Accidental Death expressly excludes from accidental death benefit coverage, "death * * * result[ing] directly or indirectly from * * * descent from any aircraft, riding in any kind of aircraft if the Insured participated in any kind of training or had any duties whatsoever aboard such aircraft." (Emphasis added.) (Exhibit A to plaintiff's complaint, Supplemental Contract for Additional Benefits for Accidental Death, p. 2)
After the insured's death, plaintiff duly submitted a proof of loss form prepared by the defendant and made claim for all benefits due under the policy, including the accidental death benefit. The defendant paid to plaintiff the sum of $12,765.83 representing the proceeds due under all coverages provided by the policy other than the accidental death coverage. The defendant has refused to pay to plaintiff the $20,000.00 accidental death benefit claimed due. This action followed.
Plaintiff has filed a motion for a partial summary judgment as to the question of whether the insured was covered by the accidental death benefit terms of the policy. Plaintiff contends that the insured's death falls within the terms of the accidental death coverage of the policy and that the only disputed fact pertains to damages and attorney's fees which are recoverable for a vexatious refusal to pay under V.A.M.S. 375.420. The defendant has filed a cross-motion for summary judgment contending that there is no accidental death coverage in the instant case.
There is no dispute as to the facts. This action turns solely on the applicability of the exclusionary terms of the accidental death coverage. The parties do not contend otherwise. "Disputes involving the interpretation of unambiguous contracts are appropriate cases for summary judgment." Parish v. Howard, 459 F.2d 616, 618 (8th Cir. 1972). See also Green v. Valve Corp. of America, 428 F.2d 342, 344 (7th Cir. 1970); Universal Fiberglass Corp. v. United States, 400 F.2d 926, 928-29 (8th Cir. 1968).
Rule 56 of the Federal Rules of Civil Procedure considers summary judgment and provides in pertinent part:
"(c) Motion and Proceedings Thereon. * * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."
Summary judgment is an extreme remedy which is not to be entered unless the movant has established its right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances. Weber v. Towner County, 565 F.2d 1001, 1005 (8th Cir. 1977); Bellflower v. Pennise, 548 F.2d 776 (8th Cir. 1977); Robert Johnson Grain Co. v. Chemical Interchange Co., 541 F.2d 207 (8th Cir. 1976). In passing upon a motion for summary judgment the Court is required to view the facts in the light most favorable to the party opposing the motion. The benefit of all reasonable inferences drawn from the underlying facts are to be given to the party opposing the motion. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); United States v. Diebold, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Weber v. Towner County, supra at 1005; Robert Johnson Grain Co. v. Chemical Interchange Co., supra at 210.
The case before the Court is one wherein summary judgment may properly be granted and judgment will be entered in favor of *330 the defendant, since no genuine issue of any material facts exists between the parties.
Initially this Court must determine the applicable law. A federal court must apply the choice of law rules of the state in which it sits in determining what law to apply in cases invoking the court's diversity jurisdiction. Klaxon v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The plaintiff is a Missouri resident. The insured was a Missouri resident at the time he applied for the insurance policy and at the time of his death. The accident occurred in Illinois. The insurance contract was executed in Texas. The plaintiff asserts that Missouri law applies, citing Moss v. National Life & Accident Ins. Co., 385 F.Supp. 1291 (W.D. Mo.1974). The defendant does not object to the application of Missouri law.
Missouri has adopted the principal contacts test in tort cases as set forth in the Proposed Official Draft of the Restatement (Second) on Conflicts of Law § 145. Kennedy v. Dixon, 439 S.W.2d 173, 181 (Mo. 1969). Since the decision in Kennedy, no Missouri appellate court has either adopted or refused to adopt the Restatement (Second) § 145 approach in the area of contracts. However, decisions from federal courts applying Missouri choice of law rules, have adopted the Restatement (Second) approach in anticipation of the Missouri Supreme Court's decision to do so. Moss v. National Life & Accident Ins. Co., supra; Nelson v. Aetna Life Ins. Co., 359 F.Supp. 271, 284 (W.D.Mo.1973); Foam-Tex Industries, Inc. v. Relaxaway Corp., 358 F.Supp. 8, 12 (E.D.Mo.1973); Binkley v. Teledyne Mid-America Corp., 333 F.Supp. 1183, 1185 (E.D.Mo.), aff'd 460 F.2d 276 (8th Cir. 1972).
Section 192 of the Restatement (Second), Conflicts of Law, provides:
"The validity of a life insurance contract issued to the insured upon his application and the rights created thereby are determined in the absence of an effective choice of law by the insured in his application, by the local law of the state where the insured was domiciled at the time the policy was applied for, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied."
The insured was a resident of Missouri at the time of his application for the policy, and no choice of law is contained in the policy. In light of the lack of objection by the parties, the prior decisions in Federal district courts in Missouri, and the doctrine contained in Restatement (Second) § 192 of Conflicts of Law, this Court concludes that Missouri courts would decide this case under Missouri law.
In deciding this case, this Court is bound by the general rules relating to the construction of insurance policies in Missouri. These principles are best summarized in Jordan v. United Equitable Life Ins. Co., 486 S.W.2d 664, 666-67 (Mo.App.1972), wherein the court stated:
"The construction of insurance contracts is governed by the same general rules as are applied to the construction of other written contracts. Plain and unambiguous language must be given its plain meaning. If the words used are ambiguous or capable of different constructions, the policy is to be construed strictly against the insurer and liberally in favor of the insured. The meaning of the terms is to be tested by the common understanding and ordinary speech of average men and women. The function of the court is not to make a contract for the parties, but to construe the language used, and has no authority to rewrite the contract. * * *
"Exceptions to liability are to be construed to give the insured the protection which he reasonably has a right to expect. * * * These general rules do not, however, authorize a perversion of language or the exercise by the court of inventive powers for the purpose of creating an ambiguity. Our function is to give force and effect to the contract as it is written, * * * and the contract should receive reasonable interpretations *331 in order to accomplish the intention of the parties. [Citations Omitted.]"
See also American Ins. Co. v. First National Bank, 409 F.2d 1387, 1390 (8th Cir. 1969); Poplar Bluff v. New Amsterdam Casualty Co., 386 F.2d 172, 173 (8th Cir. 1967).
The policy at issue clearly and unambiguously provides that no accidental death benefit is payable where death is caused by "descent from any aircraft, riding in any kind of aircraft if the Insured participated in any kind of training or had any duties whatsoever aboard such aircraft." The insured was piloting his airplane at the time of the crash. The plain meaning of the above cited exclusionary clause would preclude the insured's widow from receiving accidental death benefits.
A similar clause was applied in Smith v. Prudential Ins. Co. of America, 300 S.W.2d 435, 438 (Mo.1957). The clause involved therein provided:
"Notwithstanding anything in this Policy to the contrary, it is hereby provided that the liability of the Company shall be the limited benefit defined below if the Insured dies as a direct or indirect result of travel or flight in or descent from any kind of aircraft used anywhere for any purpose, if the Insured is a pilot, officer or member of the crew of such aircraft or is operating or assisting in the operation of such aircraft, or is giving or receiving any kind of training or instruction, or has any duties whatsoever aboard such aircraft while in flight." [Emphasis added.]
The Missouri Supreme Court held that the clause applied where the insured, by reason of his rank in the air force was formally designated as a copilot on the temporary duty order even though there was no way of ascertaining whether the insured was actually the copilot on the plane when it crashed. Therein the court stated at 300 S.W.2d 435, 440:
"The aviation clause under consideration is clear, comprehensive, and needs no `construction' in order to determine its meaning. We observe generally that it obviously was intended that the provision would exclude from full coverage any insured dying as a result of travel in any aircraft unless he was a mere passenger."
In Smith v. Metropolitan Life Ins. Co., 29 N.J.Super. 478, 102 A.2d 797 (1954), the New Jersey Superior Court was confronted with a clause which excluded benefits where the cause of death was by, "travel or flight on any species of aircraft if the insured has any duties relating to such aircraft or flight." [Emphasis added.] The court therein held the exclusionary clause to be applicable to the pilot of the plane who had died from drowning after the plane crashed in the ocean. Therein the court stated, 102 A.2d at 800:
"Under the undisputed facts, the insured having rented the plane and being the only licensed pilot aboard, had `duties' to perform in connection with the airplane, its travel and flight. The appellant concedes that: `If the word "duties", as used in the policies, or the entire clause in which the word is found, has a plain or common meaning, then there can be no ambiguity.' We find no ambiguity, vagueness nor uncertainty with respect to the interpretation of the exclusionary provision. The word `duties' is one that is of such common usage and well-known meaning; there can be no doubt or uncertainty as to the construction to be placed thereon. It clearly connotes the responsibility of the insured for the performance of an act or acts `relating' to the aircraft in question. Surely, if anyone has `duties' relating to an aircraft, its travel or flight, it is the licensed pilot thereof. If the insured did have such duties  and the proofs clearly establish that fact  then the plaintiff, under the exclusionary clauses, is precluded from recovery."
Finally, in Scarboro v. Pilot Life Ins. Co., 242 N.C. 444, 88 S.E.2d 133 (1955), the North Carolina Supreme Court held that an exclusion rider similar to the one at issue, excluded from the risk assumed by the insurer, the death of the insured which resulted from the crash of a glider operated solely by the insured for his own personal pleasure. The exclusionary rider applied to *332 death resulting from the descent of an aircraft where the insured "has any duties whatsoever aboard such aircraft while in flight." The North Carolina court held that the insured, as pilot of the glider, had duties aboard the aircraft even though no passengers were present. It stated, at 88 S.E.2d 137:
"The law imposes upon every person who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm, and calls a violation of that duty negligence."
The plaintiff asserts that the exclusionary clause is ambiguous by reason of a similar clause contained in the Waiver of Premiums section of the policy (Exhibit A to Plaintiff's Complaint, Supplemental Contract Waiver of Premiums). The Waiver of Premiums clause provides:
"RISKS NOT ASSUMED: Agreement to waive premiums under this Supplemental Contract does not cover total and permanent disability under the following conditions:
* * *
"2. if disability shall result at any time from injuries intentionally self-inflicted; or from travel or flight in or descent from or with any kind of aircraft if the aircraft is being operated by or under the direction of any military, naval or air force authority or if the Insured is a pilot, student pilot, officer or other member of the crew of the aircraft, or is aboard for the purpose of giving or receiving any kind of training or instructions or has duties aboard the aircraft or requiring descent therefrom; * * *."
The waiver of premiums clause contains a specific reference to "pilots" and also to one having "duties aboard the aircraft." The accidental death benefit exclusion refers only to one having "any duties whatsoever aboard such aircraft." The plaintiff contends that the lack of a specific reference to "pilots" in the accidental death exclusion creates an ambiguity in the policy which must be construed in favor of the insured.
This Court disagrees. The term "any duties whatsoever aboard such aircraft" is an inclusive term which in its plain meaning encompasses the pilot of the aircraft. The defendant's failure to make specific reference to "pilots" while utilizing a comprehensive term of plain meaning, does not create an ambiguity in the insurance contract. The presence or lack of a reference to a specific term neither adds nor subtracts to the scope of a clause where an inclusive term is utilized that plainly encompasses the specific term. Plain and unambiguous language in an insurance contract must be given its plain meaning. Jordan v. United Equitable Life Ins. Co., supra at 666.
The plaintiff also places considerable reliance on the decision in Ezell v. Atlantic Life Ins. Co., 119 F.Supp. 614 (M.D.Tenn. 1953). In Ezell, the court denied a motion to dismiss made by the insurer, holding that exclusion riders, which were not as inclusive as the double indemnity riders presented therein, and which excluded death resulting from flight or descent from any aircraft while the insured was pilot, copilot or other crew member, were not applicable to the insured's death which occurred while the insured was piloting a private airplane that did not carry a copilot or crew. However, the decision in Ezell was expressly rejected by the same court in Butts v. Union Central Life Ins. Co., 266 F.Supp. 739, 741 (M.D. Tenn.1967), wherein the court adopted the position taken in Scarboro v. Pilot Life Insurance Co., supra, 88 S.E.2d at 137, and quoted:
"The risk is not assumed under the Rider if the insured is: (1) a pilot, (2) an officer, (3) or other member of the crew, or (4) has any duties whatsoever aboard such aircraft while in flight."
This Court concludes that the accidental death benefit exclusion clause is clear and not ambiguous, and is applicable herein. Thus, plaintiff is not entitled to recover accidental death benefits.
Accordingly, the plaintiff's motion for partial summary judgment is denied, and the defendant's motion for summary judgment *333 is sustained. The clerk of the Court will prepare and enter the proper order to that effect.