204 N.J. Super. 63 (1985)
497 A.2d 900
TRAVELERS INSURANCE COMPANY, PLAINTIFF,
v.
TRANSPORT OF NEW JERSEY, NEW JERSEY TRANSIT CORPORATION, DOROTHY HOOD AND CLARENCE HOOD, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Camden County.
Decided February 1, 1985.
*64 Alan P. Bruce for plaintiff (Richard A. DeMichele, attorney).
Madeline W. Mansier for defendant New Jersey Transit (Irwin I. Kimmelman, Attorney General of New Jersey, attorney).
David B. Fox for defendants Dorothy Hood and Clarence Hood (Dunleavy & Bitonti, attorneys).
LOWENGRUB, J.S.C.
On cross motions for summary judgment, Travelers Insurance Company (Travelers) and New Jersey Transit Corporation *65 (Transit)[1] each seek a determination as to which of them shall be primarily liable for uninsured motorist coverage to Dorothy Hood who, as a passenger in a bus, owned and operated by Transit on September 24, 1982, was injured when the bus was struck in its rear section by a vehicle which, the parties agree, was solely responsible for the accident.
There are no genuine issues of fact in dispute and the matter is to be determined by a summary judgment. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954).
Transit acknowledges that as a self-insured it is responsible for providing uninsured motorist (U.M.) coverage as mandated by N.J.S.A. 17:28-1.1. The issue it raises, however, is that since Transit is a public entity, public policy requires that U.M. coverage first be provided by the private insurance carrier which issued the policy under which Hood is to be provided with that coverage before payment is to be made from state funds. The issue thus presented is one of first impression in New Jersey.
There must be an initial determination of whether Transit is, in fact, a public entity. In the case of The Gibson-Homans Company v. New Jersey Transit Corporation, et al, 560 F. Supp. 110 (D.N.J. 1982) the court determined, after a thorough review of the Legislature's stated reason for the creation of Transit, the nature of the office held by some of the board members, the supervisory authority of the executive branch of the government through the Commissioner of Transportation and the Governor, and the fiscal responsibility of the State for appropriations on account of the operating revenues of Transit, that any judgment against Transit would have a financial impact on the State since Transit is an alter ego of the State for *66 diversity purposes. See also Fitzpatrick v. Bitzer, 519 F.2d 559, 564-65 (2 Cir.1975), rev'd on other grounds 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). While the decision in Gibson-Homans is not binding upon this court, I find it to be persuasive and I choose to follow it in this case.
The legislative creation of Transit was to provide
... efficient, coordinated, safe and responsive public transportation ... [as] an essential public purpose which promotes mobility, serves the needs of the transit dependent, fosters commerce, conserves limited energy resources, protects the environment and promotes sound land use and the revitalization of our urban centers. [N.J.S.A. 27:25-2(a)].
Transit was established as part of the executive branch of the State government as a body corporate and politic with corporate succession pursuant to the New Jersey Transportation Act of 1979, N.J.S.A. 27:25-1 et seq. It was to be
... constituted as an instrumentality of the State exercising public and essential governmental functions and the exercise by the corporation of the powers conferred by this Act shall be deemed and held to be an essential governmental function of the State. [N.J.S.A. 27:25-4(a)]
Transit is governed by a seven-member board consisting of the New Jersey Commissioner of Transportation, the State Treasurer and other members of the executive branch selected by the Governor who shall also serve ex-officio, and four public members appointed by the Governor. N.J.S.A. 27:25-4(b). The Governor may remove any public member for cause. N.J.S.A. 27:25-4(b). Meetings of the board are governed by the Open Public Meetings Act. N.J.S.A. 27:25-4(g). The State Auditor may examine the accounts and books of Transit. N.J.S.A. 27:25-20(e). The rules and regulations adopted by Transit are to be published in accordance with the Administrative Procedure Act and filed with the Director of the Office of Administrative Law. N.J.S.A. 27:25-5(e).
Among the powers granted to Transit by the Legislature are the power to sue and be sued, N.J.S.A. 27:25-5(a). However, contract claims and suits against Transit are governed by the New Jersey Contractual Liability Act, N.J.S.A. 59:13-1 et seq. N.J.S.A. 27:25-19. Transit may apply for, accept and expend *67 funds from federal, state, county or municipal agencies and from private sources, N.J.S.A. 27:25-5(g); purchase, lease or otherwise acquire real or personal property from any public or private entity, N.J.S.A. 27:25-5(j); "deposit corporate revenues in interest bearing accounts or in the State of New Jersey Cash Management Fund established pursuant to Section 1 of P.L. 1977, c. 28" (N.J.S.A. 52:18A-90.4) (permitting the Director of the Division of Investment, subject to the approval of the State Investment Council and the Treasurer, to establish the State of New Jersey Cash Management Fund for the deposit of surplus public moneys of the State, counties, municipalities and school districts or any agencies or authorities created by any of those entities), N.J.S.A. 27:25-5(p); and acquire real and personal property by exercise of the power of eminent domain, N.J.S.A. 27:25-13(a), (c)(1).
In addition to the enumerated powers granted to Transit neither it nor any "wholly owned business corporation, or other entity shall be required to pay taxes or assessments upon any public transportation project or any property acquired or used under the provisions of" the Public Transportation Act of 1979, "including but not limited to, sales taxes, real property taxes or assessments, corporate franchise taxes or income taxes." N.J.S.A. 27:25-16. Transit is exempt from taxes for the stated reason that the exercise of the powers granted by the act are for the "benefit of the people of the State," and the operation of public transportation services "constitute the performance of essential governmental functions." N.J.S.A. 27:25-16. The act is to be liberally construed to effect its purpose. N.J.S.A. 27:25-22. Employer-employee relations between Transit and its employees are governed by the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 et seq. N.J.S.A. 27:25-13(c).
Although no debt or liability of Transit is to be deemed a debt or liability of the State, N.J.S.A. 27:25-17, the State nevertheless provides funding for Transit's operations. A review of the New Jersey Transit Annual Report 1983, "Financial Statement," reveals that the major portion of total revenue is derived *68 from operating subsidies from federal, state and local entities rather than from actual operating income. Id. at 22-29. The State of New Jersey provides the greater portion of the operating subsidies. Ibid.
After an analysis of the State's Legislative purpose set forth in the New Jersey Public Transportation Act of 1979 and the specific enumerated powers and grants to Transit therein provided, I conclude that Transit is a public entity.
In support of its theory that Transit should provide primary U.M. coverage to Hood before implicating the U.M. policy covering Hood issued by Travelers, it cites Transport of New Jersey v. Watler, 161 N.J. Super. 453 (App.Div. 1978), mod. and aff'd 79 N.J. 400 (1979), Mortimer v. Peterkin, 170 N.J. Super. 598 (App.Div. 1979) and Crocker v. Transport of New Jersey, 169 N.J. Super. 498 (Law Div. 1979). In Watler the issue stated by the court was "whether Transport, as a self-insurer, is deemed to insure itself against damage caused by an uninsured motorist and is thereby precluded from asserting a claim against the Fund." 161 N.J. Super. at 457. The "Fund" referred to is the Unsatisfied Claim and Judgment Fund. (U.C.J.F.). In that case, the U.C.J.F. appealed from an order requiring it to pay Transport a sum of money on account of a judgment entered against defendant Watler for property damage to Transport's bus which was involved in a collision with Watler's uninsured vehicle. The Appellate Division reversed the trial court's order for payment and held that Transport, as a self-insurer, was not entitled to compensation for damages caused by an uninsured motorist. The court determined that one purpose of N.J.S.A. 17:28-1.1 requiring U.M. coverage in a motor vehicle liability policy was to "prevent the drain on the Fund caused by claims against uninsured motorists." Id. at 459. This is accomplished by "[s]hifting claims from the Fund to private insurance coverage." Ibid. In its determination that the U.M. provision of N.J.S.A. 17:28-1.1 was applicable to all motor vehicles and not limited to automobiles, the court noted *69 that N.J.S.A. 17:28-1.1 refers to the U.C.J.F. law which is expressly applicable to motor vehicles and is not limited in its language to "automobiles" as is the U.M. provision. Id. at 460. The court held that all motor vehicles registered in New Jersey, including motor vehicles owned by self-insurers, were required to carry U.M. coverage as part of their liability coverage. Accordingly, Transport was held responsible to cover at least the same risks as other motorists were required to cover. Permitting Transit to receive benefits from the fund not available to other motorists who are required to provide their own U.M. coverage would violate the intent of the U.M. requirements of N.J.S.A. 17:28-1.1, 39:6-62, -70 and -71. The Watler court held that the scheme of the U.C.J.F. law requires exhaustion of alternate sources of payment for losses caused by an uninsured motorist.
The question raised in Watler, vis-a-vis "whether self-insurers are liable to their passengers for injuries caused solely by the negligence of uninsured motorists" was answered affirmatively in Crocker v. Transport of New Jersey, 169 N.J. Super. 498, 500 (Law Div. 1979). In that case, Crocker was a passenger in a bus owned by Transport of New Jersey, a self-insured. Payment was sought from the Division of Motor Vehicles through the U.C.J.F. Judgment was entered dismissing Crocker's claim against the Division of Motor Vehicles. The court held that exhaustion of alternate sources of payment be first made pursuant to N.J.S.A. 39:6-70(l) before the fund becomes obligated to make payment for losses caused by an uninsured motorist in order to relieve the fund of the financial burden relating to claims against uninsured motorists. Id. at 500. The intent of the Legislature in mandating U.M. coverage was to relieve the fund's financial reserves by requiring parallel coverage. Beltran v. Waddington, 155 N.J. Super. 264, 268 (App. Div. 1978).
The specific question remaining is whether the public policy of preventing a drain on the fund by first requiring *70 payment from private insurers is to be extended in this case to compel payment first from Travelers before payment from funds of Transit, a significant part of which are provided by the State. The answer is no. Primary coverage pursuant to an excess or other insurance clause, as in the case at bar, lies with the host vehicle's insurance carrier. Ciecka v. Transamerica Insurance Group, 81 N.J. 421 (1979).
The insulation of the Fund cannot be analogized to insulate Transit, a self-insured, to compel payment from a private insurer rather than cause, as argued, a drain on the general treasury. Transit must provide U.M. coverage as the operator of a motor vehicle. N.J.S.A. 17:28-1.1. It may provide that coverage as a self-insurer or it may obtain a policy of insurance from a carrier authorized to do business in this State. N.J.S.A. 27:25-5(r). In either event the act of providing that insurance is an operating cost that must be included as an expense of doing business. If Transit was insured by a private carrier the argument could not be made that the injured passenger must receive U.M. coverage benefits through his or her carrier before the carrier for the host owner (Transit) was made to provide that coverage. The case law is to the contrary. See Watler, supra; Ciecka, supra.
Transit's choice of being self-insured cannot alter its obligation as the host owner to provide primary U.M. coverage to an injured passenger by relying on its status as a public entity to shift the burden to the passenger's U.M. carrier compelling the latter to provide primary coverage to avoid a drain on the general funds of the State as a matter of "public policy." See, e.g., Ciecka, 81 N.J. at 429 (contract language contained in uninsured motorist provision of an insurance policy is binding absent public policy consideration which would operate to invalidate the clause). Additionally, the fact that Transit is a self-insured does not compel the conclusion that as a self-insured the U.M. coverage it provides is not "other similar insurance" which would be primarily liable as provided in the *71 U.M. clause in the Travelers' policy. To accept that construction of the policy would alter its plain language. Where the language of the contract is clear courts must interpret it according to its plain meaning. Smith v. Metropolitan Life Ins. Co., 29 N.J. Super. 478 (App.Div. 1954). Nor is there any public policy consideration in this case which would alter the result of the Supreme Court's holding in Ciecka, that the host vehicle's insurance carrier is primarily liable.
The motion for summary judgment by Travelers is granted. The motion for summary judgment on behalf of Transit is denied.
NOTES
[1] Pursuant to N.J.S.A. 27:25-13, New Jersey Public Transportation Act of 1979, L. 1979, c. 150, § 13, Transit acquired all of the stock of Transport of New Jersey. On April 13, 1982, the name of the entity operating the public bus transport company was changed from Transport of New Jersey to New Jersey Transit Bus Operations, Inc., a subsidiary of Transit.