### NEEL et al. v. MUTUAL LIFE INS. CO. OF NEW YORK.

### No. 35.

Circuit Court of Appeals, Second Circuit.

Nov. 2, 1942.

William A. Hyman, of New York City (William A. Hyman and Harold W. Hayman, both of New York City, of counsel), for plaintiffs-appellants.

Louis W. Dawson, of New York City (John G. Kelly, of New York City, of counsel), for defendant-appellee.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiffs as beneficiaries of an insurance policy issued on the life of William B. Stubbs sued to recover $25,000 under the double indemnity clause of the contract. The policy provided that the defendant would pay to the beneficiaries "Twenty Five Thousand Dollars upon receipt of due proof of the death of William B. Stubbs, the insured, or Fifty Thousand Dollars, upon receipt of due proof that such death resulted from bodily injury effected solely through external, violent, and accidental means, and occurred within ninety days after such injury, all upon the conditions set forth in Section 1."

Section 1 provides: "Double Indemnity. The Double Indemnity will be payable upon receipt of due proof that the Insured died as a direct result of bodily injury effected solely through external, violent, and accidental means, independently and exclusively of all other causes, and of which, except in the case of drowning or asphyxiation, there is evidence by a visible contusion or wound on the exterior of the body, and that such death occurred within ninety days after the date of such injury; provided that the Double Indemnity shall not be payable if death resulted from self-destruction, whether sane or insane, or from military or naval service in time of war, or from any act incident to war, or from engaging in riot or insurrection, or from committing an assault or felony, or from participation in aeronautics, or directly or indirectly from disease or bodily or mental infirmity."

At the close of the evidence the trial court dismissed the complaint on the ground that the terms of the double indemnity clause precluded recovery, saying that "death here appears to be from participation in aeronautics." We think the

proof clearly warranted the judgment reached. As the judgment was directed by the court we shall adopt all reasonable inferences from the evidence offered at the trial that may be drawn in the plaintiffs' favor. If such assumptions are made the pertinent facts may be briefly stated as follows:

The insured was a licensed solo aeroplane pilot and a fair swimmer. On June 12, 1940, at the Jumping Brook Airport, New Jersey, he got into the rear seat of a Piper Cub, two-seater areoplane, which was in good condition. The club custodian fastened his safety belt which was made so that it would be tightened by any pressure against it. Stubbs then took off in the plane flying solo and never returned to the airport. On June 28, 1940, his body was found floating in the Atlantic Ocean about nine miles east of the Manasquan Inlet, face down, with the arms extended forward in front of the head. The captain of the fishing boat that found the body towed it to shore. It was bluish in color, indicating asphyxiation from drowning, and was considerably decomposed, but neither the captain nor the coroner, who held an inquest, saw any broken bones or other signs of physical injuries. On August 22, 1940, the plane was found by the captain of another fishing boat with its wings intact. The next day he pulled it up by the use of a winch and windlass, took it into his boat and towed it to shore. It did not remain in one piece when salvaged but the motor was brought up first, then the fuselage and then the tail. The belt for the seat where Stubbs had sat was open and in good condition.

Plaintiffs wish us to infer that because the safety belt was unbuckled and unbroken and the plane had a door which had to be opened for the pilot to get out, and because no fracture of any of Stubbs' members was found, the latter must have got out of the plane when it landed and died from drowning while trying to swim to shore. In support of their theory they refer to the testimony of one witness who on the day after the accident, and near the place where it occurred, said that he saw the plane floating in the ocean with its wings spread on the surface of the water. On the other hand, some of the witnesses testified that when the body of the insured was discovered one of his legs was found to be broken, and because of this it is argued that death must have been due to a violent concussion caused by the falling of the plane and not to drowning as claimed by plaintiffs' counsel. But, at least for the purposes of argument, we accept the plaintiffs' theory as one which a jury might adopt. Nevertheless we are convinced that it cannot support a recovery.

The policy provides that Double Indemnity shall not be payable if death resulted "from participation in aeronautics" and it seems quite contrary to the natural meaning of the proviso to say that Stubbs did not meet his death from "participation in aeronautics" merely because he may not have been killed by impact upon the water. If he landed in the open sea, even though without immediate injury, drowning was an almost inevitable consequence. To say that his death did not result "from participation in aeronautics" would exclude from the proviso of the policy the most ordinary risks involved and limit the effect of the clause in an unexpected and unreasonable way. As Judge Cardozo said in Bird v. St. Paul F. & M. Ins. Co., 224 N.Y. 47, 120 N.E. 86, 87, 13 A.L.R. 875: "General definitions of a proximate cause give little aid. Our guide is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract. It is his intention, expressed or fairly to be inferred, that counts. * * * The same cause producing the same effect may be proximate or remote as the contract of the parties seems to place it in light or shadow. That cause is to be held predominant which they would think of as predominant. A common-sense appraisement of everyday forms of speech and modes of thought must tell us when to stop. It is an act of 'judgment as upon a matter of fact.'"

Judge O'Brien expressed the same thought in Gibbs v. Equitable Life Assurance Society, 256 N.Y. 208, at page 210, 176 N.E. 144. Cf. Leyland Shipping Co. v. Norwich Fire Ins. Society [1918], A.C. 350, 369.

In Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99, 100, 57 A.L.R. 615, the Supreme Court of Missouri took the view we are taking here under a similar state of facts. The policy there bound the company to pay an indemnity of $10,000 for loss of life resulting from bodily injuries effected directly and independently of all other causes solely through accidental means and also contained the following provision: "The insurance here-

under shall not cover injuries fatal or nonfatal, * * * sustained by the insured * * * while in or on any vehicle or mechanical device for aerial navigation, or in falling therefrom or therewith or while operating or handling any such vehicle or device."

The insured in that case lost his life by drowning when his seaplane capsized after alighting because of engine trouble. The court said that if the single indemnity provision of the policy were alone to be considered the insurer would necessarily be liable, but that the subsequent clause controlled and as fully relieved the company from liability where the insured met his death by drowning occasioned by a forced landing at sea as it would have done if he had died from a fall upon the ground.

In the circumstances we have set forth it hardly seems useful to deal with questions about the burden of proof for it is clear that whatever assumptions we may indulge in, the death of the insured "resulted * * * from participation in aeronautics." It would not have occurred when it did if he had not taken the flight in the aeroplane, and liability for death resulting from such a flight was exactly what was excepted from the coverage of the policy. In other words, the flight, and not the drowning, was the predominant cause of death.

In certain cases where an insured, as a result of an epileptic fit, has fallen into water and been drowned, or has fallen on a railroad track and been run over, courts have refused to apply clauses in insurance policies providing that the benefits were not to extend to accidental injuries or death caused by or in connection with "fits or any disease." The theory has been that the "fits" were not the immediate cause of death. Winspear v. The Accident Insurance Co. Ltd., 6 Q. B. D. 42; Lawrence v. Accidental Insurance Co., 7 Q. B. D. 216; Manufacturers' Accident Indemnity Co. v. Dorgan, 6 Cir., 58 F. 945, 22 L.R.A. 620. These are extreme cases. In such policies it may not have been intended to relieve the insurer from liability for death arising out of epileptic seizures except where death was due to the disease itself. Otherwise protection would be denied to the insured for accidents under the very circumstances when, because of his physical infirmity, they would be most likely to occur. Here, as a matter of common knowledge, and in view of the natural meaning of the words used, liability is excluded by the terms of the policy when an accident is incident to an ordinary risk of aviation.

The trial judge was plainly right when he said: "The law will not split the chain of causation but will recognize that the landing of the decedent's plane in the ocean, an unsafe place for a land plane and its occupant, is the real cause of his death, and that participation in aeronautics was the cause."

Judgment affirmed.