The SECURITY MUTUAL LIFE INSURANCE COMPANY, a foreign corporation, Plaintiff in Error,

v.

Helen J. HOLLINGSWORTH, Defendant in Error.

No. 42054.

Supreme Court of Oklahoma.

Sept. 9, 1969.

Rehearing Denied Oct. 14, 1969.

Ben L. Burdick, Jack R. Durland, Jr., Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, Oklahoma City, for plaintiff in error.

Schwoerke & Schwoerke, by C. W. Schwoerke, Oklahoma City, for defendant in error.

BERRY, Vice Chief Justice.

This is an appeal from a judgment entered upon a jury verdict in favor of defendant in error, who was plaintiff in an action to recover accidental death benefits under a group life insurance policy, issued by plaintiff in error, under which plaintiff's decedent was insured.

The policy involved, covering employees of the Oklahoma National Guard, provided for payment of accidental death benefits, but also contained this exclusionary clause:

"This accidental death or dismemberment benefit shall not be payable if the death or dismemberment of the Insured shall result directly or indirectly from

\*    \*    \*    \*    \*    \*

"4. Travel or flight in any species of aircraft, except as a passenger on a licensed aircraft piloted by a licensed passenger pilot on a scheduled air service regularly established between specified airports. \* \* \*"

The essential facts are not in serious dispute. Defendant admitted issuance of the policy to plaintiff's husband, and that death occurred while the policy was in force.

The petition alleged these matters: Insured's death by drowning after a private airplane in which he was a passenger made an emergency landing in Lake Shawnee; deceased was uninjured in the landing, climbed from the plane and began swimming toward shore; when approximately 50 feet from where water was shallow deceased became entangled in a trot line and drowned; this was an independent, intervening, and proximate cause of accidental drowning which made double indemnity benefits due and payable under terms of the policy.

Defendant answered admitting issuance of a group policy under which deceased was insured. By way of defense death was alleged to have resulted directly or indirectly as result of travel in a private plane piloted by other than a licensed passenger pilot on a scheduled air service; insured's death was not covered under accidental death provision of policy by reason of above quoted exclusion in the policy issued; defendant was not indebted to plaintiff under the policy or for any reason.

The evidence showed decedent, accompanied by the pilot Webb and one Barnard, all National Guard employees, left work about 4:20 P.M. on the day in question. After visiting a local tavern briefly the parties adjourned to the airbase and embarked on a flight, the plane being piloted by Webb. This flight lasted until about 6 P.M. The parties returned to the tavern

and were joined by Doyle Burris, an employee at Tinker Field. About 7–7:30 P. M. the parties began a second flight with Webb as pilot, deceased in the right front seat, and the others in the rear seats. The course of flight eventually was over Shawnee Lake, where the plane circled, and came back close to the water. When the tail struck the water the plane bounced three times, struck the water and sank, with the tail sticking up. Other than slight scratches on two men (Webb and Barnard) none of the occupants were injured. When the plane began sinking the four men started swimming toward a light on shore approximately 200 yards away. Shortly after beginning to swim Burris was heard calling for help. When Barnard was about 30 feet from a boat dock he heard deceased call for help and, upon reaching the dock, turned and observed deceased then was approximately 50 yards from the dock. Barnard sought but was unable to find a boat, returned to the dock and assisted Webb from the water, then restrained him from returning when deceased again called for help and was observed swimming in the same place on top of the water. The witness was of the opinion deceased was on top of the water 10–15 minutes before finally sinking from sight. Undisputed evidence established deceased was recognized to be a strong swimmer.

An employee of the Wildlife Department (Rose) upon learning the plane had gone down returned to the lake and proceeded to the scene in his boat. Being directed to the location where the drowning victims were thought to be, Rose, accompanied by another, began dragging the area between the dock and the sunken plane and shortly discovered one victim. This body was not entangled, and was removed from the water and carried to the dock. The second body was found approximately an hour later during dragging operations conducted by the local fire department. When discovered this body was entangled in a trot line, which had to be cut away before the body could be removed.

At this point we mention the severely conflicting evidence concerning recovery of the bodies. Defendant's evidence was that deceased's body, the first recovered, was not entangled in anything. Further, the second body, recovered approximately an hour later, was entangled in a trot line. There was deposition testimony from members of the fire department rescue squad which indicated the second body removed from the water was that of deceased. This testimony, given upon basis of the fire department records of the tragedy by those who participated in the occurrence, indicated deceased was the second body recovered.

The deposition testimony mentioned was objected to, upon grounds the best evidence for identification of the second body recovered was the official fire department records. The witnesses indicated inability to identify this body, and based their testimony upon the records. Defendant insists such evidence was not competent, and resulted in severe prejudice, since the best evidence rule demanded production of these records.

Demurrer to plaintiff's evidence was overruled, as was defendant's motion for directed verdict at close of the evidence. Errors assertedly resulting from overruling these motions provide basis for defendant's principal claim for reversal of the judgment. The issues were submitted to the jury under instructions from the trial court which defendant contends were erroneous, in part, because instructing the jury upon proximate cause which was inapplicable to the issue of liability under the insurance contract and prejudicial to defendant's rights.

The jury returned a verdict in plaintiff's favor for the amount ($7,500.00) due under the policy for accidental death benefits, with interest from date of insured's death. This appeal results from the judgment entered upon that verdict.

Before discussion of arguments offered to support claims of reversible error the following matters should be mentioned. The policy here involved insured against accidental death or dismemberment. The only applicable exclusion is the aeronautics exclusionary clause quoted above. Defendant admits, and the evidence positively shows, insured's death was occasioned by drowning. Obviously liability attached unless such accidental death specifically was excluded by the policy.

However, in this connection defendant states the general rule that, where terms of the policy are not ambiguous, establishment of a right of recovery is determinable solely within the legal conditions specified by the contract. Metropolitan Life Ins. Co. v. Rosier, 189 Okl. 448, 117 P.2d 793. Defendant then urges under McCarty v. Occidental Life Ins. Co., etc., Okl., 268 P.2d 221, plaintiff had the burden of proving the accident in which deceased was involved was covered specifically under the contract. From this defendant then concludes plaintiff was required to show death was not within the exclusionary clause under which defendant denied liability.

The holding in McCarty, supra, is not susceptible of such interpretation. Following Rosier, supra, the decision simply holds that in actions to recover either accidental death benefits, or double indemnity benefits under an ordinary life policy under a policy provision making accidental death a condition of liability, the plaintiff must accept and discharge the burden of establishing death resulted from accidental means. Consistently since Union Accident Co. v. Willis, 44 Okl. 578, 145 P. 812, L.R.A. 1915D, 358, this rule has been stated:

"* * * where death or injury has resulted from one of the excepted causes enumerated in the policy, the onus both of averment and proof in such regard rests upon the insurer. * * *"

We observe nothing in McCarty, supra, which provided any change in this rule.

See also General Accident, etc. Corp., Ltd. v. Hymes, 77 Okl. 20, 185 P. 1085, 8 A.L.R. 318. Also see authorities cited in Pacific Ind. Co. v. Kohlhase, 9 Ariz.App. 595, 455 P.2d 277, at p. 279, reflecting general adherence to this rule.

Defendant's principal argument for reversal is based upon alleged insufficiency of evidence to support plaintiff's cause of action. Argument is presented under two subdivisions, the first of which urges plaintiff was precluded from recovery under the exclusionary clause, insured's death having resulted directly or indirectly from being a passenger in the airplane. This court has had little occasion to interpret such exclusionary provision of an insurance contract. See Reed v. Home State Life Ins. Co., 186 Okl. 226, 97 P.2d 53, wherein we affirmed a judgment denying double indemnity benefits resulting "* * * from engaging as a passenger or otherwise in submarine or aeronautic operations * * *."

Necessarily pertinent authorities cited by the parties arose from consideration extended the question by other courts. Few of these cases resulted from exclusionary clauses couched in such restrictive terms as language employed in defendant's policy. Most decisions involve exclusions against "participation in aeronautics" by an insured. Variety of exclusionary phraseology, construction and interpretation of terms, application of rules, reasoning relied upon and widely variant results achieved by other courts may be reviewed under annotations presented in 17 A.L.R.2d 1043 and 45 A.L.R.2d 463.

Many courts have denied recovery under policies containing various types of exclusion, where insured drowned subsequent to a plane crash. Several of these decisions are cited and relied upon by defendant. We do not agree, however, these cases unequivocally pronounce the prevailing rule. Among cases cited by defendant are Rauch v. Underwriters, etc. (CCA9) 320 F.2d 525; Neel v. Mutual Life Ins. Co., etc.

(CCA2) 131 F.2d 159; Rossman v. Metropolitan Life Ins. Co., (D.C.Me.) 71 F. Supp. 592; Pittman v. Lamar Life Ins. Co. (CCA5) 17 F.2d 370. Recovery was denied in Pittman, supra, under an exclusion against any participation in submarine or aeronautic activity, upon the theory the exclusion was broad enough to cover whatever was ordinarily incident to a plane trip, and activity included presence or movements in or near the plane incidental to beginning or concluding the trip.

Other cases cited by defendant refer to Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99, 57 A.L.R. 615, and in effect adopt the reasoning there expressed. There recovery was denied under an accident policy which excluded injury sustained "while in or on any vehicle or mechanical device for aerial navigation, or in falling therefrom or therewith or while operating any such vehicle or device." Insured was a passenger on a seaplane en route from Florida to Bahama Islands. Motor trouble forced the plane to alight in the sea. A hugh wave caused the plane to capsize and some passengers were thrown into the ocean. A survivor observed insured float past the plane. Holding the quoted clause applied to the aircraft under this situation, that court decided the clause relating to injuries sustained in falling from the machine applied. This was without regard to whether death occurred by fatal injury or drowning since the ultimate cause of death would result from the same producing cause—falling from the machine. The conclusion reached is based upon the assumption drowning resulted from insured falling from the plane, without consideration of evidence showing insured, and other passengers, were equally apt to have been washed overboard when the plane was struck by a hugh wave.

Among decisions cited by defendant are Smith v. Metropolitan Life Ins. Co., 29 N. J.Super. 478, 102 A.2d 797; Order of the United Commercial Travelers v. King (CCA4) 161 F.2d 108; Green v. Mutual Ben. Life Ins. Co. (CCA1) 144 F.2d 55;

Hobbs v. Franklin Life Ins. Co. (CCA5) 253 F.2d 591. Examination of these cases reflects each court considered an insured's death from drowning, after the plane had crashed or come to rest in the water, was the "inevitable consequence", "predominate cause", or "almost inevitable consequence of travel by aircraft." In each instance the conclusion is predicated upon reasoning that "but for" flight in an airplane the insured would not have perished.

We are of the opinion the force of this argument fails when measured against reasoning advanced in Tierney v. Occidental Life Ins. Co., etc., 89 Cal.App. 779, 265 P. 400. There insured was taken by plane from Venice to Marsh Field in Riverside County. After landing insured remained in the plane while talking and acknowledging introduction to law officers. Some 5 minutes after landing insured removed his goggles, stepped out on the wing of the plane and onto the ground where he bent forward to avoid a wire, and in raising up was struck by the propeller, suffering fatal injuries. The issue was whether insured's death resulted from accidental means, under a policy which excluded fatal or non-fatal injury sustained "while participating in or in consequence of having participated in aeronautics." Upholding the beneficiary's right to recover upon the policy that court reasoned:

"* * * The question now presented, to state it both negatively and affirmatively, is not, Did the accident happen as a part of the aeronautics? for, as we have seen, the 'aeronautics' had been completed; nor is it, Did the accident happen while the insured was still a passenger? for the insurance contract says nothing about that relation. The question presented is: Did the accident happen as the result of or because of that which is now past, 'having participated in aeronautics'? Did the participation cause the death?

"The insured might have met a similar death had he climbed into the cockpit just from curiosity after the plane had

landed, in which case he would not have participated in aeronautics at all. Upon the completion of the flying and as deceased was climbing from the plane he might have been shot by the accidental discharge of a revolver in the hands of one of the officers to whom he was introduced. To be sure, the doctrine of chances would put deceased somewhere else. Had he not flown to Riverside county he probably would not have been there to climb into the machine or out of it; but by reason of this improbability can it be argued that, because he was there by flight, that the flight caused the accident? The question answers itself; The flight was not the proximate cause, but there was the intervening act of the deceased in his poor judgment in so conducting himself after climbing out of the machine to be struck by the propeller.

\* \* \* \* \* \*

"\* \* \* At first blush, the flight and the accident being so close together, one is apt to confuse the meaning of sequence and in consequence. One is apt to broaden the word 'aeronautics' to include everything concerning and surrounding an airplane and a flight. But the uncertainty clears completely when 'aeronautics' is understood to mean only the flight and 'in consequence' to mean the cause of a happening."

The most factually analogous case discovered is McDaniel v. Standard Acc. Ins. Co. (CCA7) 221 F.2d 171. The policy sued upon excluded death or other loss resulting directly or indirectly from injury while in or on any device for air travel, or in falling or otherwise descending therefrom or therewith. A private plane carrying insured and another was forced to land in a lake approximately 35 yards from shore. Neither was injured, both left the plane fully clothed and began swimming toward shore within about two minutes after landing, and just before the plane sank. The water was clear, deep, still and cold. Insured, the pilot, was observed swimming and seemed all right. Approximately 3 minutes after landing the passenger reached shore and, while being pulled up an embankment by others, observed insured had stopped swimming when about 15 feet from shore and just went down. The insurer defended on the ground drowning was an undisputable risk associated with flight in a private plane which was intended to be excluded from the policy. In holding the exclusion clause did not apply that court stated:

"\* \* \* If this argument is logical it would mean also that if a person were forced to land his private plane in a pasture, where, after safely alighting, he was gored to death by a vicious bull, an insurer would not be liable on a policy containing the clause now under consideration. Likewise, such a landing made in a public highway followed by an accidental death of the insured after alighting from his plane and resulting from being struck by a passing automobile, would be similarly excluded from such a policy.

"There is no evidence in this record that the death of the insured resulted directly or indirectly from injuries sustained by him while in the airplane or in falling or descending therefrom or therewith. Furthermore, there is no evidence from which such an inference can be reasonably drawn. After leaving the plane he swam a considerable distance in cold water and drowned. The exclusion clause of the policy does not apply to this case."

The same result was reached in Eschweiler v. General Acc. Fire & Life Assurance Corp. (CCA7) 241 F.2d 101, wherein the insurer appealed from a judgment for beneficiary in an action for death benefits. Insured made a forced landing upon the ice covered surface of a lake 100 yards from shore, the plane overturned and the cockpit submerged. Escaping from the plane insured began walking toward a highway, which involved traveling approximately a half mile over the ice, during which time insured broke through the ice

several times, but extricated himself and eventually reached land a few feet from the highway. Insured was found and assisted to his feet, but was in extremis, able only to state his plane had crashed, and died before a physician arrived. Autopsy showed no injury except superficial abrasions, nor evidence of physical injury or disease, other than debilities normally found in a man of his age. The exclusion clause was even more restrictive than in McDaniel, supra. The court found insured's death did not result from injuries sustained while in or on, falling with or from, or while operating or handling an airplane, and the exclusion clause did not bar liability. And, in this case it was held the insurer's reliance upon an airplane exclusion clause to defeat recovery required the insurer to assume the burden of proving such accident within the exclusion clause.

We turn now to the first contention which urges error in overruling defendant's demurrer to the evidence and the motion for directed verdict. The first argument is predicated upon the claim insured's death resulted directly or indirectly from being a passenger in an airplane, which fact precluded recovery under terms of the policy. The petition charged, and the evidence is undisputed insured died by drowning. This cause of death specifically was included within double indemnity provisions of the policy. Upon this showing plaintiff discharged the burden required to establish right of recovery. Under the rule in Metropolitan Life Ins. Co. v. Rosier, supra, upon which defendant relies, affirmative showing death resulted from a specific hazard accepted by the policy was established by preponderance of evidence.

Defendant, however, relied upon an affirmative defense of non-liability based upon the exclusion clause. We do not conceive the rule in Rosier to be so extensive as the application defendant seeks to make. The burden there was to show liability resulting from an insured's death by accidental means against the defense of suicide.

To discharge this burden of proving accidental death, and in consequence negate suicide, was upon plaintiff.

The evidence in this appeal showed plaintiff's decedent died from drowning, a hazard included in the policy. The burden then was upon defendant to prove death resulted directly or indirectly from having been a passenger in the plane. It was essential to such defense that defendant show insured's participation in the flight had a causative relation to his death. The evidence showed the flight had terminated without injury to insured, and all participants were in a position of at least potential safety.

We are of the opinion the reasoning expressed in McDaniel, supra, effectively forecloses defendant's contention insured's death resulted directly or indirectly from the airplane flight. Under these circumstances not all reasonable men would agree the act prohibited by the exclusion clause had any causative connection, or relation with insured's death. The trial court correctly overruled both defendant's demurrer to the evidence and motion for directed verdict.

Further argument is made that plaintiff failed to present evidence to establish a cause of action under the group insurance contract, or to establish insured's death resulted from accidental drowning caused by becoming entangled in a trot line. The evidence as to whether insured was entangled in a trot line was conflicting, particularly as concerned testimony from members of the fire department rescue squad, whose testimony was based upon matters disclosed from their examination of fire department records. Defendant contends the trial court's admission of this testimony assertedly was prejudicial and constituted reversible error.

No necessity arises for extended discussion of this phase of argument. The policy insured against death by drowning. It is admitted drowning was the cause of death. For this reason whether insured

drowned as a result of becoming entangled in a trot line, as alleged in the petition is not of controlling importance. For reversal upon the ground of admission of incompetent evidence defendant has the burden of showing both incompetency of evidence admitted over its objection and that same was prejudicial. It is unnecessary to decide whether the testimony objected to was inadmissible because violative of the best evidence rule. The determinative issue of fact, accidental death by drowning, was established by other evidence. Argument concerning testimony as to whether insured drowned from becoming entangled in a trot line, as alleged, is purely a matter of semantics. Payne v. McRay, Okl., 446 P.2d 49; Missouri-Kansas-Texas Railroad Company v. Hayes, Okl., 445 P.2d 254.

A further contention claims reversible error in giving certain instructions, for the reason these instructions were inapplicable to construing liability under the insurance contract and were prejudicial to defendant.

Defendant requested two instructions. One was to the effect that plaintiff could not recover if the jury found insured's death resulted directly or indirectly from travel or flight in the plane. The second requested instruction pointed out that accidental death benefits were not payable if death resulted directly or indirectly from travel in the airplane, and then proffered definitions of "directly or indirectly." These requests were refused.

The trial court's instruction (No. 3) precisely defined the terms "results directly" and "results indirectly" for the jury. Thereafter, the court advised the jury (No. 6) the question to be determined was whether there was an independent, intervening cause of death separate and distinct from the plane landing in the lake, or that death resulted from another cause rather than travel in the plane being the direct or indirect cause.

Defendant argues these instructions created an erroneous impression since the in-

struction concerning an intervening cause is applicable to proximate cause in negligence cases. Defendant then cites Federal Life Ins. Co. v. Firestone, 159 Okl. 228, 15 P.2d 141, stating this rule:

"The rule of proximate cause as applied ordinarily in negligence cases does not apply in construing liability under the policy in question in this case. The question presented under the policy in question herein was whether the injuries caused the death of the insured directly and independently of all other causes."

Defendant insists it had no burden to show the flight and subsequent crash was the proximate cause of death, and to place such burden upon defendant requires a judicial change in the policy. From this position defendant tenuously argues and concludes the instruction relating to independent, intervening cause amounted to an instruction as to proximate cause, and application of this doctrine when construing liability under this group policy was erroneous.

■ This argument lacks substantial merit. First, the rule in Firestone, supra, is conditional, in that the rule of proximate cause "as applied ordinarily" does not apply in construing liability under an accident policy. Secondly, plaintiff alleged insured's death was not the direct or indirect result of airplane flight, but was occasioned by an independent cause which intervened. We are unable to follow argument advanced as supporting the conclusion language used in instruction No. 6 placed a burden upon defendant to show the flight and subsequent landing was the proximate cause of insured's death. However, assuming the instruction was technically incorrect from use of "independent and intervening cause of death", the further statement that traveling in the plane "was not the direct or indirect cause of death" completely clarified the preceding statement and expressly defined the only ground upon which liability could attach.

A judgment is not to be reversed for error in instructions given unless prejudice results, the best test for prejudice being the possibility of a different verdict had the error not occurred. A. T. & S. F. Ry. Co. v. Messmore, Okl., 339 P.2d 779. Even assuming substance to defendant's argument against the language of the instruction, where it does not appear claimed error did not mislead the jury or result in miscarriage of justice, and no different verdict and judgment probably would have been rendered absent such instruction, giving of the instruction is harmless error and provides no ground for reversal. Bottoms v. Botts, Okl., 349 P.2d 653.

■■■■ Defendant also contends the trial court erred in allowing the jury to award interest on the amount due, under the double indemnity provision of the policy, from date of insured's death. It is argued plaintiff failed to present evidence of demand for payment under the policy and, under terms of the contract, death benefits were payable only upon receipt at the home office of proof insured's death occurred solely through external, violent, accidental means. The policy required written notice of insured s death. Admittedly defendant paid the principal sum due. Having complied with this portion of the policy it must be presumed defendant had sufficient notice of loss, and contemporaneously denied liability for accidental death benefits. Since defendant admits both payment and denial of liability, attempted argument against allowance of interest, for failure to present evidence showing demand for payment does not merit further consideration.

Propriety of allowing interest from date of loss under a policy was determined in Fidelity Phenix Fire Ins. Co. v. Board of Education, etc., 201 Okl. 250, 204 P.2d 982. The conclusion stated, based upon application of 23 O.S.1961, § 22, negates the claim of error urged by defendant.

Judgment affirmed.

All Justices concur.