**LINCOLN LIBERTY LIFE INSURANCE COMPANY, Appellant,**

v.

**Clarice M. GOODMAN, Appellee.**

**No. 8553.**

Court of Civil Appeals of Texas, Amarillo.

March 8, 1976.

Rehearing Denied April 5, 1976.

Evans, Pharr, Trout & Jones, Charles B. Jones, Lubbock, for appellant.

Crenshaw, Dupree & Milam, Max C. Addison, Lubbock, for appellee.

ROBINSON, Justice.

Plaintiff Clarice M. Goodman filed suit to recover benefits payable on the death of her insured husband, Jackie Leo Goodman, under a life insurance policy issued by defendant Lincoln Liberty Life Insurance Company. The insurance company answered contending that Goodman's death occurred as a result of the risk excluded by a rider limiting liability if the insured's death occurred as a result of specified aviation activities. The trial court entered judgment for plaintiff on a jury verdict. Defendant insurance company appeals. Reversed and rendered.

The exclusion in question reads as follows:

This Policy is issued under the express condition that should the death of the Insured occur as a result of operating, or riding in, or descending from any kind of aircraft if the Insured is a pilot, officer or member of the crew of such aircraft or is giving or receiving any kind of training or instruction or has any duties aboard such aircraft or requiring descent therefrom, then in such event the Company's liability shall be limited to a single sum equal to the greater of (a) the premiums paid on this Policy, decreased by any dividends returned and any indebtedness on or secured by this Policy, or (b) the reserve under this Policy, increased by any dividend accumulations and by the reserve on any outstanding dividend additions, less any indebtedness on or secured by this Policy; provided, however, that in no event shall such liability be greater than the amount payable in the absence of this provision.

The insured Goodman, a licensed pilot, took off from the airport at Lubbock, Texas, bound for Detroit, Michigan, in a Piper Aztec aircraft on August 27, 1966. With Goodman was Cody Corbell, a student pilot, and Harold F. McInroe, who was not a pilot. The aircraft with the three occupants landed in Springfield, Illinois. The aircraft was refueled and took off at 6:36 p. m. C.D.T., 23:36 G.M.T. The aircraft contacted Springfield Radio shortly after takeoff. No further radio contact was had with the aircraft. Eight days later the partially clothed body of Harold McInroe washed ashore from the waters of Lake Michigan. The body showed no external injuries. No trace of Goodman, Corbell, or the plane was ever found. No emergency flotation equipment was carried aboard the aircraft.

The parties stipulated as follows:

Neither party has developed any information or evidence by investigation to show that the three occupants, Jack Goodman, Cody Corbell and Harold McInroe were not in the aircraft when it either landed, ditched or crashed into the waters of Lake Michigan.

Plaintiff adduced the opinion testimony of Dr. John Anthony Valentiejus, a medical doctor who examined McInroe's body, and of Dr. Richard G. Snyder, a witness who testified as an expert on human tolerance to impact and on water ditchings of general aviation aircraft.

Dr. Valentiejus testified that he knew of no method that could be employed on McInroe's body considering the state of decomposition to determine absolutely the cause of death. He found no evidence of ante mortem trauma and testified that in his opinion McInroe died from drowning. He further testified that he thought that if an aircraft crashed with high speed impact, that he would be able to find evidence of such a crash on a plane passenger's body. He also testified that based on his experience it would be unlikely that only one of three occupants of an aircraft would have escaped injury in a water ditching.

Dr. Snyder testified that in his opinion in all probability contact was made with the water with insufficient force to have caused disabling or fatal injuries to any of the occupants. Among factors which he considered were the absence of ante mortem trauma to McInroe's body, the configuration of the plane, the pilot's experience, the condition of the lake, weather conditions, and the National Transportation Safety Board statistics and briefs concerning water ditchings. Snyder stated that he believed that the occupants had the opportunity to escape the aircraft. He also stated that he

thought that they, in all probability, did escape the aircraft.

The jury made the following responses to special issues:

1. Jack Goodman died on or about August 27, 1966.

2. The aircraft in question contacted the waters of Lake Michigan with insufficient force to cause disabling or fatal injuries to Jack Goodman.

3. Jack Goodman escaped from the Aztec aircraft after it contacted the waters of Lake Michigan.

4. Jack Goodman drowned.

5. The death of Jack Goodman did not occur as a result of operating, riding in, or descending from the aircraft.

6. At the time of his death, Jack Goodman did not have duties aboard the aircraft or have duties requiring descent from the aircraft.

6–A. At the time of his death, Jack Goodman was not giving or receiving any kind of training or instruction.

6–B. At the time the Aztec aircraft contacted the waters of Lake Michigan, Jack Goodman was not giving or receiving any kind of training or instruction.

7. At the time the aircraft contacted the waters of Lake Michigan, Jack Goodman had duties aboard the aircraft but did not have duties requiring descent from the aircraft.

8. At the time of his death Jack Goodman was not either a pilot, officer or member of the crew of the aircraft.

9. At the time the aircraft contacted the waters of Lake Michigan, Jack Goodman was either a pilot, officer or member of the crew.

10. After the aircraft contacted the waters of Lake Michigan, Jack Goodman reached a position of potential safety prior to his death.

On appeal the insurance company challenges the legal and factual sufficiency of the evidence to support the jury findings that Goodman's plane contacted the waters of Lake Michigan with insufficient force to cause disabling or fatal injuries; that Goodman escaped from the plane after it contacted the water; that Goodman drowned; that after the plane contacted the water and prior to Goodman's death, he reached a position of potential safety; and that Goodman's death did not occur as a result of operating, riding in or descending from the aircraft.

The defendant insurance company contends that Goodman's death is within the exclusion whether he drowned after escaping from the plane into Lake Michigan or was injured or killed on impact.

The plaintiff contends that Goodman's death is not within the exclusion if he escaped from the aircraft into the lake before his death, or if Goodman died as a result of drowning rather than as a result of injuries received on impact.

Neither plaintiff nor defendant have cited case authority from the Texas state courts dealing with the applicability of an aircraft exclusion to a death following the ditching or crashing of a plane into water and we have found none. They have, however, collected and discussed numerous such cases from other state courts and federal courts. Among cases considering the application of aviation exclusion clauses to deaths from drowning or exposure after a crash or ditching are *Hobbs v. Franklin Insurance Company,* 253 F.2d 591 (5th Cir. 1958); *Neel v. Mutual Life Ins. Co. of New York,* 131 F.2d 159 (2d Cir. 1942); *Green v. Mutual Ben. Life Ins. Co.,* 144 F.2d 55 (1st Cir. 1944); *Order of United Commercial Travelers of America v. King,* 161 F.2d 108 (4th Cir. 1974); *Rossman v. Metropolitan Life Ins. Co.,* 71 F.Supp. 592 (D.Me.1947); *McDaniel v. California-Western States Life Ins. Co.,* 181 F.2d 606 (5th Cir. 1950); *Smith v. Metropolitan Ins. Co.,* 29 N.J.Super. 478, 102 A.2d 797 (1954); *Elliott v. Massachusetts Mutual Life Insurance Company,* 388 F.2d 362 (5th Cir. 1968); *Goforth v. Franklin Life Insurance Company,* 202 Kan. 413, 449 P.2d 477 (1969); *Howard v. Equitable Life Assurance Society of the United States,* 360 Mass. 424, 274 N.E.2d 819

(1971); *Prudential Insurance Company of America v. Howe,* 232 Ga. 1, 205 S.E.2d 263 (1974), and *Security Mutual Life Insurance Company v. Hollingsworth,* 459 P.2d 592 (Okl.1969). The various courts denied recovery under the policy in each of these cases except the *Hollingsworth* case from Oklahoma.

In *Hollingsworth,* the plane carrying the insured and three others went into Shawnee Lake, 200 yards from shore. All four started for shore. Two reached shore. The insured, a strong swimmer, called for help and was seen afloat about 50 yards from the bank for 10 or 15 minutes before disappearing from view. There is evidence that he became entangled in a trot line as he neared shore. In Oklahoma, unlike Texas, the burden of proof is on the insurance company to show that the death is within the exclusion. We note that the court, in permitting recovery, relied on *McDaniel v. Standard Accident Insurance Company,* 221 F.2d 171 (7th Cir. 1955), and *Eschweiler v. General Accident Fire & Life Assurance Corp.,* 241 F.2d 101 (7th Cir. 1957), both cases dealing with exclusions relating to injuries occurring while in or on aircraft. The facts in *Hollingsworth* are quite different from those surrounding Goodman's death and we do not consider it persuasive in the case before us.

The rationale of the remaining cases is set out in the court's opinion in *Neel v. Mutual Life Ins. Co. of New York,* supra. In *Neel,* the insured pilot took off in a plane known to be in good condition. A witness testified that the insured fastened his seat belt. Sixteen days later he was found floating in the ocean. The coroner found no evidence of broken bones or other physical injury and the cause of death was assumed to be drowning. The plane was later recovered with the wings intact to the fuselage. The seat belt was unfastened. In holding for the insurance carrier, the court stated:

> . . . it seems quite contrary to the natural meaning of the proviso to say that Stubbs did not meet his death from "participation in aeronautics" merely be-

cause he may not have been killed by impact upon the water. If he landed in the open sea, even though without immediate injury, drowning was an almost inevitable consequence. To say that his death did not result "from participation in aeronautics" would exclude from the proviso of the policy the most ordinary risks involved and limit the effect of the clause in an unexpected and unreasonable way.

> \*   \*   \*   \*   \*   \*

The trial judge was plainly right when he said; "The law will not split the chain of causation but will recognize that the landing of the decedent's plane in the ocean, an unsafe place for a land plane and its occupant, is the real cause of his death, and that participation in aeronautics was the cause."

In *Elliott v. Massachusetts Mutual Life Insurance Company,* supra, the insured drowned after parachuting from his aircraft. It was stipulated that when he sought to disentangle the parachute shroud lines from his ankle while he was in the sea, his life preserver shifted making it difficult for him to raise his head above the surface of the water. The language of the two exclusions in *Elliott* is similar to the language of the exclusion of the policy before us. The *Elliott* provision dealing with the face amount of the policy provides that the following risk is not covered by the policy:

> "Death resulting from travel or flight in, or descent from or with, any kind of aircraft aboard which the insured is a pilot or member of the crew  \*   \*   \*   or has any duty incident to the operation of said aircraft."

One of the exceptions to the double indemnity portion of the *Elliott* policy provides:

> "The benefits under this provision shall not be payable if the death of the insured shall have resulted directly or indirectly from:  \*   \*   \*   (4) travel or flight in, or descent from or with, any kind of aircraft aboard which the insured is a pilot or member of the crew or is a student or instructor of aeronautics or is giving or receiving any kind of training or instruc-

tion or has any duty incident to the operation of said aircraft."

The court in *Elliott* held that each clause is intended to exclude the risks of aviation and that "death by drowning after escaping from an airplane downed in the ocean results from a risk of flight against which the clauses are directed."

■ After a study of the cited cases, including the facts and the language of the aircraft exclusion in each case, and after a review of the evidence in the case before us, considering it in the light most favorable to plaintiff and disregarding all unfavorable evidence and inferences, we conclude that plaintiff has failed as a matter of law to sustain her burden of proving that the insured Goodman did not die as a result of activities excluded in the policy before us. We find that there is no evidence to support the jury findings that Goodman reached a position of potential safety after the plane contacted the water and before his death or that Goodman's death did not occur as a result of operating, riding in or descending from the aircraft.

We further find that testimony concerning the lack of visible ante mortem trauma to McInroe's body, together with the opinion testimony of Dr. Valentiejus and of Dr. Snyder that McInroe's body probably would have shown signs of ante mortem trauma if there had been a severe impact at the time the aircraft contacted the water, is some evidence to support the jury finding that the aircraft contacted the water with insufficient force to cause disabling or fatal injuries to Jack Goodman. There is no evidence to the contrary. We conclude, after a consideration of all the evidence, that the evidence is factually sufficient to support both that jury finding and the finding that Jack Goodman drowned.

Both parties tried the case on the apparent assumption that the plane went down in Lake Michigan. Nevertheless, no trace of the plane has been seen since it took off from the Springfield airport. The bodies of Goodman and Corbell have never been found. The record is devoid of evidence showing why the plane went down or, except for the condition of McInroe's body, the manner in which it contacted and entered the water. There is no evidence concerning the time the plane remained afloat, if it did. In expressing belief that the occupants probably escaped the aircraft, Dr. Snyder made no assumption and expressed no opinion concerning how long the plane stayed afloat. Even if the opinion of Dr. Snyder should be considered as some evidence that the occupants escaped the aircraft, we conclude, after a consideration of the entire record, that the evidence is factually insufficient to support the finding that they did escape.

■ By cross-point plaintiff contends that the trial court erred in refusing to allow in evidence a letter which was written by the defendant insurance company's claims manager and which plaintiff claims construes the exclusionary provision of the policy. We overrule that cross-point. The clause in question is not ambiguous. It is fundamental that parol evidence will not be received except to explain an ambiguity, and that it will not be received to create ambiguity where none existed before. *Lewis v. East Texas Finance Company,* 136 Tex. 149, 146 S.W.2d 977 (1941); *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154 (1951); *McMahon v. Christmann,* 157 Tex. 403, 303 S.W.2d 341 (1957). Further, if the letter was offered as an admission concerning the legal effect of the language of the clause in question it is not admissible. Conclusions of law are not admissible as admissions by a party. *Lasiter v. Washington Insurance Company,* 412 F.2d 594, 597 (5th Cir. 1969). See also *National Union Fire Ins. Co. of Pittsburgh v. Richards,* 290 S.W. 912 (Tex.Civ.App.— Waco 1927, no writ).

The foregoing holdings are dispositive of the case before us. We do not reach defendant's remaining points of error or plaintiff's cross-points relating to the submission of special issues.

It is stipulated that a single payment of $16,320 was made as the first year's premium on the life insurance policy in question. By terms of the policy, plaintiff's recovery

is limited to that amount. The judgment of the trial court granting recovery for the face amount of the policy is reversed and judgment is here rendered that plaintiff recover the amount of the premium paid in the sum of $16,320.