TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-96-000369-CV







Board of Trustees of the Employees Retirement System of Texas and Group Life & Health
Insurance Company, Appellants


v.


Linda Benge, Appellee





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT

NO. 94-15803, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING 





 The Board of Trustees of the Employees Retirement System of Texas denied accidental
death benefits, holding that the insured's death was caused by air travel or flight, an activity excluded from
coverage under the policy at issue. The district court ruled that Stroburg v. Insurance Co. of North
America, 464 S.W.2d 827 (Tex. 1971), required the Board to make a specific finding that the excluded
activity was the proximate cause of death before denying benefits; it remanded this matter to the Board for
such a determination. We hold that Stroburg imposes no such requirement under these circumstances. 
We will reverse the district court's judgment and affirm the order of the Board. 


FACTUAL AND PROCEDURAL BACKGROUND

 State Representative James F. Hury flew his plane in an air show in October 1992. When
he landed, his plane went into a "ground loop," (1) turning completely around before coming to a stop in the
neighboring runway. Another plane, which landed moments later, collided with Mr. Hury's plane. Mr.
Hury, who had not yet disembarked, suffered substantial injuries resulting in his death. At the time of the
accident, Mr. Hury was insured under a life insurance policy issued by Group Life and Health Insurance
Company, under the terms of the Texas Employees Uniform Group Insurance Benefits Act, which is
administered by the Board as trustee. See Tex. Ins. Code Ann. art. 3.50-2 (West 1981 & Supp. 1997). 
After receiving $171,000 in term life benefits, Mr. Hury's widow, Linda Benge, also sought accidental
death benefits. Group Life denied recovery based on the policy's aviation exclusion. After a contested
case hearing, the Board denied the claim in a final order. Ms. Benge sought judicial review of the Board's
order. The district court upheld the Board's finding that Mr. Hury had been engaged in air flight or travel
at the time of his death, but was persuaded by its reading of Stroburg that the Board incorrectly applied
the aviation exclusion without first determining that the excluded activity was the proximate cause of Mr.
Hury's death. The district court remanded the cause to the Board to make a proximate cause
determination. The Board and Group Life appeal the district court's judgment remanding this cause to the
Board. (2) By cross appeal, Ms. Benge contends Mr. Hury was not engaged in air travel or flight at the time
of the accident.


DISCUSSION

 The standard of our review of the Board's order is that provided for cases of "substantial
evidence" review under the terms of the Administrative Procedure Act. See Tex. Gov't Code Ann. §
2001.174 (West 1995); see also Tex. Ins. Code Ann. art. 3.50-2, § 4B(d) (West Supp. 1997). That is
to say, we may not reverse the Board's order unless the agency record demonstrates that Benge's
substantial rights have been prejudiced by the Board's committing one of the errors listed in section
2001.174(2)(A)-(F) of the APA. We must uphold the order on any legal basis shown in the record even
if the Board gave an erroneous legal basis for its decision. See Railroad Comm'n v. City of Austin, 524
S.W.2d 262, 279 (Tex. 1979); Texas Employment Comm'n v. Hays, 360 S.W.2d 525, 527 (Tex.
1962).

 The policy excludes coverage for loss caused by or resulting from:

E. Travel or flight in any vehicle or device for aerial navigation, including boarding or
alighting therefrom:


. . . .



 3.  While traveling or flying in an aircraft . . . as a pilot or member of the
crew . . . . 



In denying coverage based on the exclusion, the Board found that (1) Mr. Hury was engaged in air travel
or flight as contemplated by the language of the exclusion, and (2) this participation in air travel or flight
caused or resulted in his death. We will first consider the Board's finding that Mr. Hury was engaged in
air travel or flight because if this finding is not supported by substantial evidence we need not address the
issue of causation. 


Air Travel or Flight

 In her first cross point of error, Ms. Benge contends that the Board erred in finding that Mr.
Hury was engaged in flight or travel as contemplated by the aviation exclusion. Her argument rests on the
contention that a plane standing still on the runway, as Mr. Hury's plane was at the moment of impact,
cannot reasonably be considered to be engaged in travel or flight, since both concepts imply movement. 
We reject this contention and defer to the Board's interpretation of the policy exclusion.

 Pursuant to statute, the Executive Director of ERS has "exclusive authority to determine
all questions relating to enrollment in or payment of claims arising from programs or coverage provided
under authority of this Act." Tex. Ins. Code Ann. art. 3.50-2, § 4B(a) (West Supp. 1997). Accordingly,
in adjudicating a contested case, the Board has the undeniable power to determine as a matter of law the
meaning of its chosen words. See McMullen v. Employees Retirement System of Texas, 935 S.W.2d
189, 191 (Tex. App.--Austin 1997, writ requested). As in the case of an agency's interpretation of its
own regulations or a statute entrusted to the agency's administration, the Board's interpretation of a policy
exclusion is entitled to judicial respect regarding any uncertainty. See Tarrant Appraisal Dist. v. Moore,
845 S.W.2d 820, 823 (Tex. 1993). The Board's ruling that Mr. Hury was engaged in air travel or flight
is presumptively valid and will be upheld so long as the interpretation is a reasonable one. See McMullen,
935 S.W.2d at 191.

 In conducting a substantial evidence review, we must first determine whether the evidence
as a whole is such that reasonable minds could have reached the conclusion the agency reached. See
Texas State Bd. of Dental Examiners v. Sizemore, 759 S.W.2d 114, 116 (Tex. 1988), cert. denied,
490 U.S. 1080 (1989).

 The contract provision excludes loss caused by or resulting from "[t]ravel or flight in any
vehicle or device for aerial navigation including boarding or alighting therefrom." The use of such inclusive
language contemplates that travel or flight continues over a continuum of time. Ms. Benge argues that travel
contemplates only movement through space and once Mr. Hury brought his plane to a complete stop on
the runway he was no longer flying or traveling through space. Although at the time of the collision Mr.
Hury's flight may have ended in the aeronautic sense of the word, the fact that his plane was stopped does
not mean that his flight or travel was over within the legal meaning of the aviation exclusion. The Board
construed "travel or flight" to encompass the time period from the moment of boarding through
disembarking rather than just the period of actual movement through the air or on the ground. The
exclusion itself defines travel or flight as including boarding or alighting from the plane. Mr. Hury may have
momentarily stopped on the runway, but had he not been struck by the landing plane, he would have had
to taxi his plane to a hangar or holding area where he could safely deplane. His travel had not ended in any
meaningful sense of the word.

 The Board soundly construed "travel or flight" to encompass the time period of a few
seconds following Mr. Hury's landing of his plane, irrespective of the plane's actual movement at that
instant. Ms. Benge's proposed construction would result in intermittent coverage depending on a plane's
actual movement through space: a pilot waiting on a runway for take-off instructions would be covered,
while a pilot taxiing off the runway would be excluded from coverage. The Board could have reasonably
rejected such an arbitrary construction of the policy exclusion. Moreover, the Board could have
reasonably concluded that the risks associated with flight encompass the risk of landing the plane and the
risk of losing control upon landing by looping over into the landing space allotted to another plane. We hold
the Board's interpretation of air travel or flight as contemplated by the aviation exclusion is neither legally
erroneous nor arbitrary and capricious. We further hold its finding that Mr. Hury was engaged in air travel
or flight is supported by substantial evidence, and overrule the first cross point. Because of our subsequent
holding, we need not address the second cross point of error.


Stroburg and Proximate Cause

 After determining that Mr. Hury had been engaged in air travel or flight, the Board
concluded that his death was caused by or resulted from that activity. The district court relied on Stroburg
v. Insurance Co. of North America, 464 S.W.2d 827 (Tex. 1971), to hold that the Board was required
to find that air travel or flight was the proximate cause or cause-in-fact of Mr. Hury's injuries before it
could apply the aviation exclusion. In their overlapping points of error, the Board and Group Life complain
it was error to remand for a finding on proximate cause because Stroburg either does not apply to aviation
exclusions, or does not require that the excluded activity be the sole proximate cause of the injuries. We
are persuaded that the district court misapplied the holding in Stroburg to the Board's decision in this
matter.

 The insurance policy in Stroburg covered losses "resulting directly and independently of
all other causes from bodily injuries caused by accident" and expressly excluded losses caused by or
resulting from illness or disease. The insured died from multiple injuries received in a car accident. The
insurance company denied coverage, alleging that the insured's pre-existing bleeding ulcer had caused the
accident and that emphysema compromised the insured's recovery from his injuries. The jury awarded
benefits under the policy. The court of appeals reversed and rendered judgment for the insurance
company, finding that there was no evidence to uphold the jury's finding that the accident "directly and
independently" caused the insured's death. Stroburg, 456 S.W.2d 402 (Tex. Civ. App.--Austin 1970),
rev'd, 464 S.W.2d 827 (Tex. 1971). The intermediate court never considered the language of the
exclusionary clause, but held that Mr. Stroburg's death did not fall within the coverage provision which
required the accident to be the cause of death "independently of all other causes." The Texas Supreme
Court disagreed that the evidence established as a matter of law that either the ulcer or the emphysema
was a concurring cause of Mr. Stroburg's death; it reinstated the jury's verdict because some evidence
supported the jury's findings that the accident directly and independently caused the death, without regard
to the ulcer or the emphysema. (3) In reaching its decision, the supreme court noted that when a policy covers
losses "directly and independently" caused by accidental injury, the accident must be the sole cause of
death. Id. at 829. But it also stated that in this regard, preexisting disease or illness would not defeat
recovery if the condition or disorder is "so remote in the scale of causation, so dormant and insubstantial,
or so temporary and transient that it does not materially contribute to the death or injury." Id. (quoting
Mutual Benefit Health & Accident Ass'n v. Hudman, 398 S.W.2d 110, 112 (Tex. 1965)). The jury
was so instructed in Stroburg and could have reasonably concluded that Mr. Stroburg's ulcer and
emphysema were so insubstantial in the scale of causation that they did not in legal contemplation contribute
to the cause of death.

 The issue before the supreme court in Stroburg was whether some evidence supported
the jury's findings that death resulted from the accident "independently of all other causes." The court of
appeals had not addressed the applicability of the exclusion clause and that issue was not presented to the
supreme court. Nevertheless, the supreme court's opinion contains additional language suggesting that an
exclusion for loss "caused by or resulting from" certain risks will exclude liability "only when such risks are
a proximate as distinguished from an indirect or remote cause of the loss." Id. at 831-32. Several courts
have followed Stroburg by holding that coverage can be denied under an illness or disease exclusion only
when the illness or disease has proximately caused the loss. See Connecticut Gen. Life Ins. Co. v.
Stice, 640 S.W.2d 955, 958 (Tex. App.--Dallas 1982, writ ref'd n.r.e.); American Hosp. & Life Ins.
Co. v. Choate, 513 S.W.2d 902, 903-04 (Tex. Civ. App.--Beaumont 1974, no writ); National Life &
Accident Ins. Co. v. Franklin, 506 S.W.2d 765, 768 (Tex. Civ. App.--Houston [14th Dist.] 1974, writ
ref'd n.r.e.). In applying this type of policy exclusion, courts have required proximate causation to ensure
that coverage is denied only when the illness or disease is a material, not a remote, cause of the loss. The
Stroburg court noted that "a remote cause of a cause would not be proximate cause." Stroburg, 464
S.W.2d at 831. By requiring that the accident be the sole cause of death and prohibiting the excluded risk,
i.e., the illness, from being a remote cause, the supreme court was able to give the intended coverage full
effect. Absent this "proximate cause" requirement, exclusions based on illness or disease would always
eliminate accidental injury coverage unless the victim was in perfect health at the time of the accident. As
Justice Cardozo aptly stated, policies are issued to those who are neither "an Apollo or Hercules." (4) 
Stroburg's reasoning prevents the illness or disease exclusion from swallowing up the policy's intended
coverage for the risk of loss from accidental injury.

 By contrast, policies involving aviation exclusions seek to exclude accidental loss resulting
from a certain risky activity. Accidental death or loss is considered to be more probable when one is
piloting or serving as a crew member of an aircraft. That is the very risk that the exclusion encompasses. 
However, rarely is a pilot or crew member injured by an actual mid-air collision during flight; death or loss
typically results from drowning or some other calamity precipitated by the aerial activity. Ms. Benge
contends Stroburg requires the excluded risk be the sole proximate cause of death in order for the
exclusion to take effect. A literal requirement that air travel or flight be the sole proximate cause of a loss
occasioned by flying would severely restrict the effectiveness of every aviation exclusion. This is illustrated
by Ms. Benge's argument that the sole proximate cause of Mr. Hury's death was another plane colliding
with his on the runway at a time when Mr. Hury was neither flying nor traveling. Ms. Benge concedes that
Mr. Hury was put in harm's way by the excluded risk, but insists that the excluded risk was not the sole
proximate cause of his injuries. Stroburg does not require such an absurd result, and the courts that have
considered aviation exclusions have not so applied it.

 In Lincoln Liberty Life Ins. Co. v. Goodman, 535 S.W.2d 7 (Tex. Civ. App.--Amarillo
1976, writ ref'd n.r.e.), the insured died when his plane crashed in Lake Michigan. The plaintiff sought to
avoid the policy exclusion which denied certain benefits for loss "occur[ring] as a result of operating, riding
in or descending from any kind of aircraft," by claiming the cause of death was drowning. Id. at 8. The
court held that the aviation exclusion applied even though evidence supported the jury's finding that the
insured had indeed died by drowning. See id. at 11. The court relied on a Fifth Circuit holding that a
policy exclusion for death resulting from travel or flight was intended to exclude the risks of aviation and
one such perceived risk was death by drowning after an airplane is downed at sea. See Elliot v.
Massachusetts Mut. Life Ins. Co., 388 F.2d 362, 368 (5th Cir. 1968).

 In Neel v. Mutual Life Insurance Co., 131 F.2d 159 (2d Cir. 1942), the Second Circuit 
also refused to limit the aviation exclusionary clause in an "unexpected and unreasonable way" by splitting
the chain of causation. Neel recognized that such clauses intend to exclude the most ordinary risks
associated with air travel or flight, such as death by drowning after a crash. Id. at 160-61. In numerous
cases involving death by drowning or exposure after a crash, courts have consistently denied benefits
because of aviation exclusion clauses. See Hobbs v. Franklin Life Ins. Co., 253 F.2d 591 (5th Cir.
1958) (insured eventually drowned after plane crashed leading to exposure and exhaustion); New York
Life Ins. Co. v. Rogers, 641 P.2d 218 (Alaska 1982) (uninjured by plane's water landing, insured
subsequently died of hypothermia or drowning); Totten v. New York Life Ins. Co., 680 P.2d 1021 (Or.
App. 1984), aff'd, 699 P.2d 1082 (Or. 1985) (insured drowned after his hang glider landed in the ocean).

 In Cabell v. World Service Life Insurance Co., 599 S.W.2d 652 (Tex. Civ.
App.--Texarkana 1980, writ ref'd n.r.e.), the insured died when his parachute lost its lift during descent
and he fell to the ground. His accidental death policy excluded losses caused by, contributed to, or
resulting from injury sustained while riding in any vehicle or device for aerial navigation. (5) The plaintiff
contended that the insured was not engaged in aviation when he was killed. The court found that the
insured had died as a result of participating in aviation because a malfunctioning parachute would be an
ordinary risk contemplated by a policy excluding aerial activities.

 Surely one of the most ordinary risks associated with flying is the risk of accident upon
landing one's plane. Here, after Mr. Hury landed he lost directional control as his plane went into a
"ground loop." The plane spun completely around and moved from the right to the left runway, coming to
rest with its nose pointing toward the trailing plane that was designated to land there seconds later. Neither
plane was able to avoid the collision. The aviation exclusion contemplated just such a risk.

 In Stroburg the court was dealing with a provision excluding liability for loss resulting from
illness or disease; the court found some evidence supported the jury's finding that the procuring cause of
loss was accidental, despite the presence of an ulcer and emphysema that might have indirectly contributed
to death in a medical sense. The Stroburg court never stated that the excluded risk must be the sole
proximate cause of injury before benefits could be excluded. Rather, the court held that coverage would
not be defeated as a matter of law if the risk intended to be covered, accidental injury, was a proximate
not a remote cause of Mr. Stroburg's death. Here the Board found that the risk intended to be excluded,
flying an airplane, caused Mr. Hury's death. To require a finding of sole proximate cause before excluding
a loss so clearly contemplated by an aviation exclusion would limit the exclusion in an unexpected and
unreasonable manner. Proximate causation, in the insurance context, whether applied to coverage or to
an exclusion, does not require the fact finder "to search beyond the active, efficient, procuring cause to a
cause of a cause." Stroburg, 464 S.W.2d at 830-31 (citation omitted). Stroburg requires only that the
excluded risk be a proximate or direct cause, as distinguished from an indirect or remote cause, of the loss
suffered.

 We have upheld the Board's finding that Mr. Hury was engaged in air travel or flight at the
time of his death. His air travel was not remote in time or space: the accident occurred only moments after
Mr. Hury landed and his plane veered into the path of the next landing aircraft. Under these circumstances,
the Board could reasonably have found that Mr. Hury's flying activity was a direct, not an indirect, cause
of his accident. Stroburg requires nothing more.

 We hold that the district court erred in remanding this matter to the Board to make a
separate finding that air travel or flight was the proximate cause of Mr. Hury's injuries. We sustain the
Board's first and second points of error and Group Life's first, second and third points of error. Because
of this holding we need not address the Board's fourth point of error.

 In reviewing this agency decision, we hold there was substantial evidence before the Board
to support its finding that air travel or flight caused Mr. Hury's accident and that this was a risk
contemplated by the aviation exclusion. Because its order was supported by substantial evidence and was
not arbitrary or capricious, the district court erred in not affirming the decision of the Board. We sustain
the Board's fifth and Group Life's fourth point of error. 


CONCLUSION

 We affirm the district court's judgment and the Board's finding that Mr. Hury was engaged
in air travel or flight at the time of his death. We reverse the district court's judgment remanding this case
to the Board for a specific finding that this excluded activity was the proximate cause of Mr. Hury's injuries. 
We affirm the Board's order denying accidental death benefits to Ms. Benge.




 

 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Kidd and B. A. Smith; Chief Justice Carroll not participating

Reversed and Rendered

Filed: March 27, 1997

Publish
1.   The Board found that a "ground loop" is a loss of directional control.
2.   The Board brings five points of error complaining that the district court erred (1) in holding that a fact
finding on proximate cause is required; (2) by holding that the excluded activity must be the proximate
cause of death; (3) by not finding proximate cause as a matter of law if such a finding is required; (4) by
prohibiting the agency from accepting new evidence on remand; and (5) by not affirming the Board's
conclusion because it was supported by substantial evidence and was not arbitrary or capricious. Group
Life brings four points complaining that the district court erred by (1) applying Stroburg to an aviation
exclusion; (2) requiring a finding of fact on the issue of proximate cause; (3) remanding to the Board for
a finding that the excluded activity was the proximate cause of death; and (4) reversing and remanding the
cause to the Board. Because they generally overlap, we will discuss the two appellants' points of error
together when possible. 
3.   The supreme court then remanded the cause to the court of appeals to review the challenges to the
factual sufficiency of the evidence. Stroburg, 464 S.W.2d at 832.
4.   Silverstein v. Metropolitan Life Ins. Co., 171 N.E. 914, 915 (N.Y. 1930).
5.   In insurance cases involving exclusionary clauses, "contributed to" does not lighten the burden for the
insurer by requiring only that the excluded activity be a concurring cause of the loss. See National Life
& Accident Ins. Co. v. Franklin, 506 S.W.2d 765 (Tex. Civ. App. --Houston [14th Dist.] 1974 writ
ref'd n.r.e.). Thus, Cabell is not distinguishable based on the "contributed to" language found in the
exclusionary clause. 



ate or direct cause, as distinguished from an indirect or remote cause, of the loss
suffered.

 We have upheld the Board's finding that Mr. Hury was engaged in air travel or flight at the
time of his death. His air travel was not remote in time or space: the accident occurred only moments after
Mr. Hury landed and his plane veered into the path of the next landing aircraft. Under these circumstances,
the Board could reasonably have found that Mr. Hury's flying activity was a direct, not an indirect, cause
of his accident. Stroburg requires nothing more.

 We hold that the district court erred in remanding this matter to the Board to make a
separate finding that air travel or flight was the proximate cause of Mr. Hury's injuries. We sustain the
Board's first and second points of error and Group Life's first, second and third points of error. Because
of this holding we need not address the Board's fourth point of error.

 In reviewing this agency decision, we hold there was substantial evidence before the Board
to support its finding that air travel or flight caused Mr. Hury's accident and that this was a risk
contemplated by the aviation exclusion. Because its order was supported by substantial evidence and was
not arbitrary or capricious, the district court erred in not affirming the decision of the Board. We sustain
the Board's fifth and Group Life's fourth point of error. 


CONCLUSION

 We affirm the district court's judgment and the Board's finding that Mr. Hury was engaged
in air travel or flight at the time of his death. We reverse the district court's judgment remanding this case
to the Board for a specific finding that this excluded activity was the proximate cause of Mr. Hury's injuries. 
We affirm the Board's order denying accidental death benefits to Ms. Benge.




 

 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Kidd and B. A. Smith; Chief Justice Carroll not participating

Reversed and Rendered

Filed: March 27, 1997

Publish
1.   The Board found that a "ground loop" is a loss of directional control.
2.   The Board brings five points of error complaining that the district court erred (1) in holding that a fact
finding on proximate cause is required; (2) by holding that the excluded activity must be the proximate
cause of death; (3) by not finding proximate cause as a matter of law if such a finding is required; (4) by
prohibiting the agency from accepting new evidence on remand; and (5) by not affirming the Board's
conclusion because it was supported by substantial evidence and was not arbitrary or capricious. Group
Life brings four points complaining that the district court erred by (1) applying Stroburg to an aviation
exclusion; (2) requiring a finding of fact on the issue of proximate cause; (3) remanding to the Board for
a finding that the excluded activity was the proximate cause of death; and (4) reversing and remanding the
cause to the Board. Because they generally overlap, we will discuss the two appellants' points of error
together when possible. 
3.   The supreme court then remanded the cause to the court of appeals to review the challenges to the
factual sufficiency of the evidence. Stroburg, 464 S.W.2d at 832.
4.   Silverstein v. Metropolitan Life Ins. Co., 171 N.E. 914, 915 (N.Y. 1930).
5